WILLIS B. SAYRE, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Under the provision of the act of 1887 (Chap. 507, Laws of 1887), which authorizes an appeal to this court from a final award or order of the Board of Claims, "upon questions of law only, arising upon the hearing of the claim, or upon the excess or insufficiency of such award or order," and provides that this court "shall hear such appeal and affirm, reverse or modify such award or order, or dismiss such appeal, or award a new hearing before the Board of Claims as justice may require," this court may for any legal error increase or diminish the award as justice may require, and, as modified, affirm the decision without sending the case back for a rehearing.

Upon trial before the Board of Claims, of a claim against the state for damages caused by the overflow of claimant's land, because of the defective construction of a canal embankment, the undisputed evidence showed and the board found, that the use of the land overflowed was worth at least $6.50 per acre annually, and that the claimant entirely lost such use; thus showing loss to claimant to be, up to 1870, at least $6,864. The board awarded only $3,000, *Held* error, that the claimant was entitled to the whole amount of damages shown

It appeared that in 1870 the state dug a ditch to drain the land, but that it was two years thereafter before it could be rendered fit for cultivation, during which time it remained substantially useless. *Held,* that the damages for the two years should have been added to the award

In digging said ditch, the earth taken therefrom was thrown out upon the sides thereof in piles, and, as the proof showed and the commissioners found, the claimant was obliged to expend $500 in moving the same. The board refused to allow anything therefor. *Held*, error.

It appeared, and the court found, that the claimant expended a considerable sum of money in reclaiming the land and putting it in condition for farming purposes after it had been drained. The precise amount of expenditure was not proved or found, but it appeared that it cost at least $200. *Held*, that claimant was entitled to have the award increased by adding that amount thereto.

But *held*, that the claimant was not entitled to interest upon the last two items, as they were unliquidated damages arising from a tort.

(Argued June 24, 1890; decided October 7, 1890.)

APPEAL from award of the Board of Claims, made June 22, 1888, upon a claim for damages to claimant's farm, caused by the defective construction by the state of a canal embankment.

From May 17, 1830, to January 9, 1846, Matthew Sayre, the father of the claimant, owned certain land at Horseheads, Chemung county, consisting of 138 acres. In or about the year 1832, the state constructed the Chemung canal through such land, and about the same time constructed near to it a feeder for such canal through coarse gravel about thirty feet higher than the canal where it passes through such land. When the water was let into the feeder it leaked through the same and passed upon and covered to the depth of two feet about forty-five of the 138 acres of land. The land thus overflowed was during all the time to the year 1870, rendered wholly useless. The leakage of water from the feeder was due to carelessness and unskillfulness in the construction and maintenance of the feeder. On the 9th day of January, 1846, the claimant became the owner of such land, and has ever since owned and possessed the same. In the year 1849, the Chemung railroad was built through the overflowed land, and about one and a half acres thereof were taken therefor, and the damages for such taking were assessed according to law. In the fall of the year 1869 and the spring of 1870, the state caused ditches to

be dug through the land which drained it, and caused it to become dry and tillable. In the construction of such ditches, the earth taken therefrom was placed on the edges thereof, and thus large embankments were formed which obstructed the flow of surface water; and the claimant was obliged, from necessity, to remove such earth at an expense of about $500. After the overflow of the water ceased in 1870, in consequence of the digging of the ditches, the claimant was obliged to expend, and did expend, a considerable sum of money to reclaim the land and get it in condition for farming purposes; and the land was not fully reclaimed until about two years after 1870.

For the damages thus caused to him, the claimant filed a claim against the state, in which the following items of damages were specified:

Use of forty acres, or thereabouts, from 1846 to
1870, of which claimant was deprived, at $6.50
per acre.................................... $6,240 00
Deprivation of use of land for two years after com-
pletion of ditches..........................    900 00
Cost of restoring the land....................    235 00
Damage accruing from appraisal of the railroad
company, rendered less by reason of condition
of land.....................................    500 00
Expense of removing the earth on the banks of
the state ditches...........................    500 00

The claim was brought to a hearing before the Board of Claims, and two of the commissioners united in awarding the claimant $3,000, " by reason of the overflow of water upon his said land as aforesaid, from the year 1846 to the year 1870." The third commissioner dissented, holding that claimant was entitled to an award of $8,593, made up of the following items:

Loss of use of forty-four acres of land for twenty-
six years, at $6.50 per year................ $7,336 00
Damages to land taken by railroad.............    100 00

Expenses of removing the earth taken out of the
    ditches and placed upon the sides thereof, and
    of breaking up and restoring the land after the
    ditches had been dug....................... $650 00

Interest on the last item, thirteen years........ 507 00

Further facts are stated in the opinion.

*Gabriel S. Smith* for appellant. The award appealed from
is erroneous because the damages given by it are insufficient.
(Laws of 1870, chap. 321; Laws of 1883, chap. 205, § 13;
Laws of 1887, chap. 507.) The award is insufficient because
it does not allow all the damages proven, and which are found
by the majority of the board to have been sustained by the
claimant. (Laws of 1887, chap. 507.)

*Charles F. Tabor*, Attorney-General, for respondent. On
the hearing before the Court of Appeals only such questions
shall be considered by the court as are raised by the notice of
appeal. (Laws of 1883, chap. 205, § 11.) The question of
damages was clearly one for the judgment of the board upon
the whole evidence and view of the premises. The board was
not bound to be governed entirely by the evidence of wit-
nesses. (*Perkins* v. *State*, 113 N. Y. 660.) The board did
not err in refusing to allow the claimant interest on his dam--
ages. (*McMaster* v. *State*, 108 N. Y. 557.)

Earl, J. It is not claimed on the part of the state that
any portion of the claimant's damages is barred by the Statute
of Limitations, and hence he was entitled to an award for all
the damages he proved. He claims that injustice was done
him in the amount awarded, and a careful examination of the
case has led us to the conclusion that his complaint is well
grounded.

The jurisdiction of this court upon appeals from the Board
of Claims is regulated by the act, chapter 507 of the Laws of
1887, which authorizes such appeals " upon questions of law
only arising upon the hearing of the claim, or upon the excess.

or insufficiency of such award or order," and provides that this court "shall hear such appeal, and affirm, reverse or modify such award or order, or dismiss such appeal, or award a new hearing before the Board of Claims, as justice may require."

Under the act, chapter 205 of the Laws of 1883, the commissioners of the Board of Claims were required to view the lands claimed to be damaged, and they could be somewhat influenced by the ocular proof thus obtained. But as we said in *Perkins* v. *State* (113 N. Y. 660), "the fact that the commissioners are required to view the premises and to act to some extent upon their own judgment, informed by ocular evidence, does not deprive this court of the power to review their award upon the question of damages. They may adopt some erroneous rule of damages, and their findings may be such, and the case upon all the evidence may be such as to show that they misconceived the facts and erred in their estimate."

The facts of this case are such that the view of the premises by the commissioners could be of no service to them upon the question of damages, as all the damages claimed were caused more than ten years before the Board of Claims was constituted and more than twelve years before the trial of the claim and the view of the land by the commissioners. They could, therefore, get no information as to the nature or amount of the damages by a view of the land, and there was nothing for them to base their award on but the evidence given upon the hearing. That was all given on the part of the claimant and was undisputed. It came from competent witnesses, apparently reliable, and there was nothing to discredit them.

We will take separate notice of each item of damages claimed.

1. The claimant was deprived of the use of the land overflowed from 1846 to 1870, twenty-four years. It is undisputed that at least forty-four acres of the land were constantly overflowed and submerged with water during that time, and that the land was thereby rendered useless; and all the commissioners substantially so found. There is absolutely no evi-

dence that the use of the land during the whole of that period would have been worth, but for the water, less than $6.50 per acre annually. The undisputed evidence justifies a higher estimate. The two commissioners, who united in the award, found that the use of the land annually per acre, during the whole time from 1846 to 1875 was shown to be from $6.50 to $12, and yet they awarded only the sum of $3,000 for all the damages to the land. How this arbitrary amount, in the face of the undisputed evidence and the findings, was reached is not disclosed. The damages were $286 for each year, and for the whole twenty-four years amounted to $6,864. But, after 1870, the land remained substantially useless for two years more before it could be rendered fit for cultivation, and hence $572 should be added to the damages for those years, and thus we have the sum of $7,436 for the damages on account of the loss of the use of the land for twenty-six years from 1846.

2. When the state dug the ditches in 1869 and 1870 to drain the land, it threw the earth from the same onto the sides thereof, and the claimant was obliged, as the proof shows, and as all the commissioners found, to expend in the removal of such earth the sum of $500. We can perceive no reason for the disallowance of this item. To protect itself from continuing liability, the state dug the ditches, and left the earth therefrom in piles. It was necessary to remove this earth to restore the land to its normal condition, and the expense of such removal is an item of claimant's damages, and it should have been allowed to him.

3. The claimant also claimed damages because he was obliged to take compensation from the railroad company for the land taken by it, rendered much smaller than it otherwise would have been because the land was submerged and useless when taken. We find no adequate proof in the case for the allowance of this item.

4. The claimant also claims an allowance for the expenses to which he was subjected in breaking up and reclaiming the land after the ditches had been dug, and the land had thus

been drained and rendered dry. We think this is manifestly a proper item of claim. The majority of the commissioners found that the claimant "was required to expend, and did expend, a considerable sum of money to reclaim the land and get it in condition for farming purposes," during the two years after 1870, and yet they allowed him nothing for such expenses.

The damage to the land caused by the water did not cease with the drainage of the land, but continued until the same was restored by expenditures made by the claimant. The state, by its carelessness, had rendered the land useless, and the expense necessary to make it useful again must certainly be a proper item of damage to be allowed to the claimant. The precise amount of this expense was not proved and was not found. The claimant testified that it took a team with a plow and two men to break up from one-quarter to one-half acre of the land per day; and thus to break up the forty-four acres, allowing much for the exaggeration of an interested witness, must have cost at least $200.

The last two items amount to $700, and the claimant claims that that sum was expended more than thirteen years before the award was made, and that, therefore, he should have interest on it for that time. These claims do not grow out of contract. The claimant's causes of action are based upon the negligence of the state, and all his damages were caused by the flooding of his land. They are damages caused by a tort, and were in every sense unliquidated, and we can find no case justifying an allowance of interest in such a case. (*White* v. *Miller*, 78 N. Y. 399; *McMaster* v. *State*, 108 id. 542; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 114 id. 331.)

Our conclusion, therefore, is that, upon the undisputed evidence in this case, the claimant should have been awarded, at least, the sum of $8,136, and we are asked to modify the award by increasing it to that sum. Have we authority, under the statute, to do this? Our jurisdiction, upon an appeal from the Board of Claims, is confined to questions of law. It was error of law for the board to refuse to award the claimant the damages established by undisputed evidence and actually found

by them. Upon the facts as they appear in the record, the claimant was entitled to at least the sum last named. There is no suspicion that the claim is not a just one. It has been prosecuted with great diligence for many years before the legislature, the canal appraisers and this board. It is time that the claimant should receive some measure of justice from this great state, and he should not be compelled to again resume his weary round as a suitor in her tribunals. The statute clothes us with authority to "modify" an award, and that must mean that we may, for any legal error, increase or diminish the award as justice may require.

Our conclusion, therefore, is that the award should be modified by increasing the same to $8,136, and, as thus modified, affirmed, with costs.

All concur, except RUGER, Ch. J., and O'BRIEN, J., not voting.

Judgment accordingly.