## ALEXANDER REICHERT, Respondent v. JOHN BACKENSTROSS, Appellant.

*Flooding of farm land — loss of its use for the year's crop — measure of damages.*

In an action brought to recover the damages resulting from the defendant's wrongful act in flooding the plaintiff's farm lot by opening a ditch and letting in the water therefrom, in the spring, by reason of which the land was rendered incapable of producing that year's crop for which it had been fitted, the plaintiff was permitted to testify what the land would be worth if the water had not been turned onto it.

*Held*, that a recovery based upon such a valuation was erroneous, and that the measure of damages should be limited to the fair value, as established by the evidence in the case, of the use for the year in question of the land actually flooded, which was lost to the plaintiff by reason of the flooding thereof, together with the cost of closing the ditch.

APPEAL by the defendant, John Backenstross, from a judgment of the County Court of Onondaga county, entered in the office of the clerk of that county on the 26th day of May, 1892, affirming a judgment of a justice of the peace in favor of the plaintiff rendered upon the verdict of a jury for seventy-five dollars damages.

*D. F. McLennan*, for the appellant.

*William Kennedy*, for the respondent.

HARDIN, P. J.:

Plaintiff's ten-acre lot was in part flooded by the wrongful acts of the defendant in opening a ditch and letting the water therefrom onto the lands of the plaintiff. There was ample evidence to sustain the allegations in the complaint as to the wrongful acts of the defendant, and plaintiff's cause of action was amply supported by evidence given before the jury. After a careful inspection of the evidence it is difficult to discover proof indicative that more than four acres of the plaintiff's ten-acre lot were flooded. Charles Reichert, a son of the plaintiff, was sworn in his behalf and testified, viz.: "The water was let in onto the oat field and flooded about half of the lot." Again he says: "There was probably a third of the ten acres covered with water."

(2) When the plaintiff was upon the stand as a witness he was

allowed to testify, viz.: "If land had not had the water turned onto it, it would be worth $14 or $15 an acre. I seeded it and sowed it. It would not be worth enough to pay for the labor, with the water turned on through the ditches." The appeal book states, viz.: "The above testimony was received under the defendant's objection to each and every part thereof duly taken as incompetent, irrelevant and immaterial, and not the proper rule or measure of damages." Thereafter, in the course of the cross-examination of the plaintiff, he stated: "The rental value of land is five or six dollars an acre. This land is like the rest of the farm, worth no more per acre." Anthony Ball was called by the plaintiff and allowed to testify, against the objection of the defendant, in answer to the following question: "What would the rental value of this land be per acre after it was fitted for crops for the year 1890, provided it was dry and not flooded?" His answer was "Nine dollars per acre;" and then he was allowed to answer the following question: "Assuming that the land was fitted on the 27th of April and was flooded, and flooded May 6th and 10th so as to be covered with water so a crop could not be sown until May 26th, 1890, what would be the rental value under those conditions?" The question was objected to and overruled, and the witness answered, viz.: "The land would not be worth anything. You cannot raise a crop of oats on the land which had been flooded, sowed at that time of the year. Oats should be sown in April, as early as you can get them in." Lambert Barton testified in behalf of the plaintiff, viz.: "The rental value of this land after being fitted would be worth $9 per acre." Then the following question was put to him: "Assuming this land was flooded April 27th, May 6th and 10th, what would be the rental value?" Against the defendant's objection he was allowed to answer, and said: "The part that was flooded would not be worth anything. This land is loam with clay subsoil. Flooding of such land makes it hard and unfit for taking the seed. It will dry and crack. Oats should be sown in April. Oats sown after May 20th would be a failure." The witness John testified that it was worth to fill up the ditches each time a dollar.

In *Easterbrook* v. *Erie Railway Co.* (51 Barb. 94), an action was brought for injuries done to the plaintiff's premises by water, in consequence of a diversion of a stream from its channel by the defendants

in constructing a culvert; and in that case SMITH, J., said: "The measure of damages in that class of cases is the depreciation in the value of the plaintiff's premises occasioned by the injury resulting from the defendants' acts."

In *Chase* v. *The New York Central Railroad Co.* (24 Barb. 273), which was an action brought to recover damages for injuries done to plaintiff's grounds by water alleged to have been turned onto the plaintiff's land, it was said: "It is proper to charge the jury that the rule of damages, in that class of cases, is the difference between the value of the plaintiff's premises before the injury happened, and the value immediately after the injury, taking into the account only the damages which have resulted from the defendant's acts."

In *Argotsinger* v. *Vines* (82 N. Y. 309), which was an action for trespass for cutting and removing timber, it was held: "That evidence was properly received as to the value of the farm with the timber, and its value after it was cut; and that this difference furnished a proper measure of damages."

In section 937 of Sedgwick on Damages it is said: "In estimating the value of the crop the prevailing rule seems to be to take its actual value at the time of trespass, not its probable value, assuming it would have matured." (8th ed., vol. 3, p. 50.)

If it be assumed upon all the evidence that a fair value of the use of the land for the year 1890, which was lost to the plaintiff by reason of the flooding thereof, amounted to nine dollars per acre, then the evidence that indicates that not more than five acres at most were flooded would give as a result of that item, estimated in that mode, forty-five dollars; if to that be added a dollar each time the ditch was filled up, say three times, the damages would be apparently forty-eight dollars. It is quite apparent that by reason of the rulings complained of the verdict was excessive. Upon the argument before us the learned counsel for the plaintiff admitted the force of the foregoing view of the case and proffered a stipulation to reduce the damages.

In section 3063 of the Code of Civil Procedure it is provided that "the appellate court must render judgment according to justice of the case, without regard to technical errors or defects, which do not affect the merits. It may affirm or reverse the judgment of the

justice, in whole or in part, and as to any or all of the parties, and for errors of law or of fact;" and in section 3066 a rule for the award of costs is regulated, and in the fifth subdivision of that section it is provided "if the judgment is affirmed only in part, the costs, or such a part thereof as to the appellate court seems just, not exceeding ten dollars, besides disbursements, may be awarded to either party."

Under all the circumstances of the case it seems reasonable to modify the judgment of the County Court and of the Justice's Court, so that there shall be awarded a recovery of only forty-eight dollars damages to the plaintiff, with ten dollars costs and disbursements in the County Court.

MERWIN and PARKER, JJ., concurred.

Judgment of the County Court modified as stated in the opinion, and as so modified affirmed, without costs of the appeal to either party.