ESTHER A. BENEDICT and Another, Respondents, *v.* DAVID SLITER, as Administrator, etc., of DAVID HULL, Deceased, Appellant.

*Agreement between the heirs of a lunatic, during his life, as to the disposition of his estate — rescission thereof — duty of a husband to support and bury his wife — interest not allowable on an unsettled account — costs awarded against an administrator.*

An agreement made between the heirs at law of a lunatic provided that one of the heirs at law and her husband should pay the lunatic's debts and take care of the lunatic and his wife during their respective lives, and at their death that they should be entitled to certain property of the lunatic — such heir at law and her husband were to pay to one of the other heirs at law the sum of $1,800 and to a third heir at law the sum of $800.

*Held,* that it was competent for the parties to rescind the agreement *in toto,* and in such event the contract should be treated as being void *ab initio,* in which event a just claim would exist against the estate of the lunatic for the services rendered to him.

A husband is bound to support his wife and is bound to bury her corpse.

During the lifetime of a lunatic his heirs at law and next of kin have no interest in his estate, but as the lunatic, if of sufficient ability, is bound to maintain his family, and as the court is bound to see that his property is fairly devoted to that purpose, the court may, in a proper case, direct the committee of the lunatic to make allowances in favor of those whom the lunatic is bound to provide for.

Interest is not allowable upon accounts until they are settled.

Where a referee, during the time that chapter 686 of the Laws of 1893 was in force, awarded costs to a claimant against the administrator of an estate, it must be assumed that he was of the opinion that the claim was unreasonably resisted or neglected and that he based such conclusion upon the facts which appeared upon the trial.

APPEAL by the defendant, David Sliter, as administrator, etc., of David Hull, deceased, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Delaware on the 4th day of June, 1894, upon the report of a referee.

Plaintiffs presented a claim against the defendant, as administrator, which he rejected by a notice in writing, and which was, by an agreement signed by the parties November 29, 1890, with the approval of the surrogate of Delaware county, referred by an order entered in this court December 1, 1890, and on July 27, 1893, the referee reported " that there is justly and equitably due to the plaintiffs from the estate represented by the defendant, the sum of two thousand eight hundred twenty-five and 69-100 dollars, for which said plaintiffs are entitled to judgment in this proceeding against the defendant, besides the costs." Exceptions were filed to the findings made and to refusals made to several requests presented by the defendant to the referee.

*C. Hull* and *Edwin D. Wagner*, for the appellant.

*George Adee*, for the respondents.

HARDIN, P. J.:

David Hull in 1878 resided in the town of Middletown, Delaware county, and owned two farms in that town and one in the town of Roxbury, and he made and published his last will and testament, which, after his death, which occurred on the 2d of February, 1890, was presented to the surrogate and duly proved, and letters of

administration, with the will annexed, were issued to the defendant, who qualified and took upon himself the duties of administration. In 1884 an inquisition *de lunatico inquirendo* was issued out of this court, and David Hull was found to be a lunatic, and in the proceedings had Richard Hull, his son, was appointed committee of estate, and Esther Hull, his wife, was appointed committee of his person. Richard Hull continued to act as committee of his estate until his death, which occurred on the 6th of August, 1886; thereafter no committee was appointed of the estate of David Hull. Esther Hull continued to act as committee of his person until her death, which occurred November 15, 1887. After the death of Richard Hull the only children and heirs at law of David Hull were John Hull, a son; Jane Sliter, a daughter, wife of the defendant, and Esther Benedict, a daughter, one of the plaintiffs. After the death of Richard it was apparent to the children that some fresh arrangement must be entered into looking to the suitable care and protection of David Hull and his property. His wife was enfeebled, in advancing age and infirmities and was unequal in strength and capacity to suitably care for her husband, who was then a confirmed lunatic, afflicted with senile dementia and weakness of his physical system, which rendered the care of him very burdensome. The children met on the twelfth of August and discussed the situation of affairs, and finally entered into a written agreement called Exhibit A, which is set out in the findings made by the referee. In that instrument, which was executed by the children of the deceased, and in which the wife of the deceased, Esther Hull, joined, it was in substance provided, upon a recital, that the parties "mutually desiring a settlement of their rights and interests in and to the property of the said David Hull," stipulated that Esther Hull and Jane Sliter and John Hull should sell unto Ashmun J. Benedict and Esther A. Benedict "all their right, title and interest as heirs at law, legatees or otherwise of said David Hull to and in all the real property now owned by said David Hull, situate in Middletown, Delaware county, N. Y.; also all their right, title and interest as aforesaid in and to all the personal property of every kind and description now owned by and upon said farm of David Hull, for and in consideration that the said parties of the second part shall keep, maintain and support, in health and sickness, during the lifetime of both or either of the said

David Hull and Esther Hull, his wife, and for the further considera-
tion of payment to the said John Hull the sum of $800, and to the said
Jane Sliter the sum of $1,800 * * * and the said parties of
the second part are to pay all outstanding indebtedness of said
David Hull and all debts of Richard Hull, contracted as committee
of said David Hull." It also contained a provision that the plain-
tiffs agree to purchase the property mentioned and to carry out the
agreement and to make payment, and the parties of the first part
agreed "upon the fulfillment of all the terms and condi-
tions herein mentioned, do hereby agree to make, execute and
deliver to said parties of the second part, a good and sufficient
deed of their interests in and to said property." The instrument
also contained the following language: "And the said parties of
the second part are to keep, maintain and support the above-men-
tioned David Hull and Esther Hull upon the farm where they now
reside, and the expense, care and maintenance of said persons is to
be and the same is hereby made a lien upon said real and personal
property." At the time of the execution of that instrument the
plaintiffs resided some thirty miles from Middletown and they
removed to the homestead of said David Hull in Middletown, taking
possession of the personal property thereon belonging to him, and
continued in possession of the same until the death of David Hull,
and remained in possession down to the time of the trial. It is
found as a fact "that they had previously been requested to
come and take care of David Hull, hopelessly insane at that
time, and continued so until his death, and of his wife, who was
aged and infirm, by his said wife, Esther Hull, who at the time of
making such request was acting as committee of the person of
David Hull, and had been duly appointed and have duly qualified as
such committee;" and it is found as a fact that the plaintiffs "cared
for, supported, clothed and boarded said David Hull and Esther
Hull from the time they took possession of said farms and per-
sonal property until the time of their death, and treated them
kindly and considerately. That the mental condition of David
Hull was fully known to plaintiffs before they assumed his care,
but that they found it more difficult to take care of him than they
anticipated." It is found as a fact that at the time the agreement

was executed Esther Hull, the mother, stated in the presence of John Hull and Jane Sliter that the debts of David Hull and those contracted for his benefit by Richard Hull as committee of his estate " did not exceed the sum of $500 ; " and it is further found that the plaintiffs at that time had no personal knowledge of that amount, and that the statements so made were relied upon by them to be true and operated to induce " plaintiffs to enter into said agreement. That in fact said debts largely exceeded the sum of $500." The referee also made the following finding of fact : " That after the death of David Hull and Esther Hull, and about February 13, 1890, the plaintiff, John Hull, Jane Sliter and David Sliter, her husband, met at said Sliter's house and had a conversation in regard to the contract mentioned in tenth finding of fact. In that conversation plaintiffs informed John Hull, Jane Sliter and David Sliter that they were not satisfied with the contract ; that the debts of David Hull and Richard Hull, his committee, were much greater than had been represented to them ; that instead of not exceeding $500, they were in fact $1,000 or $1,200 ; that they had been defrauded and should not carry out the contract ; that after such statement by the plaintiffs the said John Hull and Jane Sliter consented that said agreement be canceled on account of such fraud, and that it be treated as of no force and effect and not fulfilled ; that afterwards and at the same meeting it was agreed between the plaintiffs and John Hull and the Sliters that they would abide by the terms of the will of David Hull made December 3, 1878, and Richard Hull and sole executor named in said will, being dead, it was agreed by and between all the parties present that David Sliter, the defendant herein, should act as administrator with the will annexed of said will." He also found " that in pursuance of such agreement a petition was duly made to the surrogate of the county of Delaware by John Hull, Jane Sliter and Esther A. Benedict, being all the heirs at law of David Hull, then deceased, for the probate of said will," and that on the 6th day of March, 1890, the will was duly proved, and David Sliter was appointed administrator with the will annexed ; that he caused an inventory to be taken of the personal property of the testator " on the farms occupied by the plaintiffs herein, it being the same personal property that was on said farms when the plaintiffs went there,

in the year 1886 ; that the value of said personal property was, according to said inventory, $545.35, and that said personal property was sold by said administrator as such, and the avails held or used by him as assets of the estate of David Hull, deceased." The referee also found that from the 13th of August, 1886, until the 2d of February, 1890, " the plaintiffs boarded, clothed, supported and cared for the said David Hull, who was during all that time insane and incompetent to care or help himself, and was a large portion of the time very violent ; that he was cared for and kept in the plaintiff's family, and that what they did for him was necessary and proper for his comfort and safety, and was reasonably worth the sum of two thousand seven hundred dollars." The referee also found that, from August 12, 1886, until November 15, 1887, the time when the mother, Esther Hull, died, " the plaintiffs boarded, clothed, supported and cared for Esther Hull, the wife of said David Hull, in their family ; that such support and care were necessary, reasonable and proper ; that she was sick and confined to her bed a portion of the time, and that the plaintiffs' services were reasonably worth the sum of three hundred and twenty-five dollars." (*Goodale* v. *Lawrence*, 88 N. Y. 513.) The findings of fact already stated were supported by evidence given upon the hearing. It is true there was some conflicting evidence, but after a perusal of the whole evidence we are of the opinion that the conclusions of fact stated by the referee are sustained by the weight of the testimony. In addition to the testimony of the witnesses to the effect that in February, 1890, there was an agreement to waive the contract, there is quite significant force in the fact that the administrator subsequently inventoried the property which was found upon the farms occupied by the plaintiffs, and took possession of it and sold it as part of the assets of the estate. If the agreement had not been waived the personal property upon the farm in Middletown was transferred to the plaintiffs. Inasmuch as the administrator and his wife and John Hull were present at the agreement, it is fair to assume that they had acquiesced in the waiver of it, and that the inventory of the property found on the Middletown farms and the sale of it were acts based upon the assumption that the contract of August, 1886, had been canceled and waived, and by the agreement of the parties annulled. The evidence seems to support the conclusion that the parties to the

instrument of August, 1886, voluntarily consented to waive its terms and conditions, and that they should severally be limited to their legal rights as they existed after the abandonment of the contract. We think it was competent for the parties to make such an agreement, and that the contract was rescinded *in toto* (*Fullegar* v. *Reville*, 3 Hun, 600), and the agreement should be treated as being void *ab initio.* (*Utter* v. *Stuart*, 30 Barb. 20.) The evidence clearly indicates that the services were performed and the care bestowed upon the deceased and upon his wife in the full expectation that the same were to be paid for by his property. Indeed, the agreement contained a clause that such services should be a lien upon the deceased's property, and after that agreement is waived or abandoned the plaintiffs ought not to be in any less favorable position than though the agreement had not been executed. The services were performed in the expectation of payment and in the expectation of payment out of the property of the deceased, and in the expectation entertained by all his children that the expenses, extraordinary as they were, should be provided for and due compensation made by the property of the deceased which was to be applied in payment for such services. (*Davidson* v. *Westchester Gas Light Co.*, 99 N. Y. 566; *In Matter of Cunningham*, 1 Hun, 214.) The evidence justifies an inference that the deceased became liable to the plaintiffs for the services rendered in caring for him and his wife, and that they relied upon the property of the deceased to furnish ample compensation for the services bestowed upon him and his wife. The deceased was bound to support his wife and was "bound to bury the corpse of his wife." (*Patterson* v. *Patterson*, 59 N. Y. 583.) It is to be borne in mind that when the written instrument was made in 1886 the children had no interest in his real and personal property.

In Willard's Equity Jurisprudence (p. 685) it is said : " During the lifetime of the lunatic the next of kin have no interest in his estate. But as the lunatic, if of sufficient ability, is bound to maintain his family, and as the court is bound to see that his property is fairly devoted to that purpose, applications are not unfrequently made to the court for an order on the committee to make allowances in favor of those whom he is bound to provide for, and for other relatives of the lunatic towards whom he is under no such obligation."

We think this case is distinguishable from *Massachusetts General Hospital* v. *Fairbanks* (129 Mass. 78) and *Whiting* v. *Sullivan* (7 id. 107) and *In re Rhodes* (44 Ch. Div. 94), and that the referee's conclusion that the agreement, "under the circumstances of this case, in no wise affects the rights of the plaintiffs to recover in this proceeding for necessaries furnished the defendants' testator and those . he was bound to support," is correct and ought to be sustained.

Appellant calls our attention to *McCreery* v. *Day* (119 N. Y. 1), which is to the effect that where a contract is rescinded no claim in respect to performance or of what has been paid or received thereon may thereafter be made, unless expressly and impliedly reserved upon rescission. We think the case does not support the contention of the appellant. And the case of *Oregon P. R. R. Co.* v. *Forrest* (128 N. Y. 83) differs essentially from the case in hand.

(2) The referee charged the plaintiffs with the use of the land occupied by them at a sum that he found was the fair valuation of the rental, upon the assumption that the landlord or owner paid the taxes, and he found that the taxes which the plaintiffs necessarily paid amounted to $155.24, which he allowed to them in stating the account, and which seems proper to be allowed against the rent. He also found that the amount of the permanent repairs put on the buildings by the plaintiffs during the lifetime of the deceased amounted to $149.31, and that the "repairs were of substantial character and enhanced the value of said real property, and were suitable and proper to be made, and the costs of making them should be allowed the plaintiffs."

He properly allowed the plaintiffs to have a credit of $42.93, which was for the amount which accrued to C. J. Dickinson for shingles furnished to the committee of the deceased, and in settlement of which the plaintiffs advanced the money and took an assignment of him from the account therefor. It was found by the referee "that this work was necessary and proper to be done. The amount of said bill, reasonable and with interest, to the time of purchase, amounted to $42.93."

(3) The contention of the appellant is that the referee allowed erroneously interest amounting to $574.11. The referee has not stated the basis upon which he allowed interest, nor the periods of time or

any computation made by him of interest. We are inclined to think the case falls within the rule of *Smith* v. *Velie* (60 N. Y. 106), where it is said : "Interest, however, is not allowable until the accounts are settled, and the termination of the employment by the death of the master gives no right to interest from that time on the balance unpaid ;" and in *Holmes* v. *Rankin* (17 Barb. 454) the referee's report was made up, the value of board, lodging, etc., "without any interest thereon," and his ruling in that regard was approved by the court. *Holmes* v. *Rankin* was approved in *De Witt* v. *De Witt* (46 Hun, 258), and *De Witt* v. *De Witt* (*supra*) was cited with approval in *Mansfield* v. *Central Railroad* (114 N. Y. 339), and the latter case was cited with approval in *Sayre* v. *State* (123 N. Y. 297). The tenor of the cases seems to indicate that the referee fell into an error in allowing interest as stated by him in his findings of fact and conclusions of law.

(4) When the referee's report was made chapter 686 of the Laws of 1893 was in force, which amended section 2718 of the Code of Civil Procedure, and in that section it was provided, "In determining the question of costs the referee shall be governed by sections 1835 and 1836 of this act," and section 1835 prescribes that costs shall not be allowed against an executor or administrator except as provided in section 1836, and that section provides that where the payment " was unreasonably resisted or neglected \* \* \* the court may award costs against the executor or administrator, to be collected either out of his individual property or out of the property of the decedent, as the court directs, having reference to the facts which appeared upon the trial." From the allowance of costs it must be assumed that the referee was of the opinion that the claim was unreasonably resisted or neglected and that he based such conclusions upon " the facts which appeared upon the trial." The judgment entered thereon requires the costs to be collected out of the estate, and the appellant has not challenged the power or discretion of the referee in that regard.

(5) Several exceptions were taken during the progress of the hearing before the referee and to his refusals to find as well as to findings made by him. If the views already expressed are correct the exceptions present no prejudicial error. (See *Barton* v. *Scramling*, 31 Hun, 467 ; *Johnson* v. *Hicks*, 1 Lans. 150.)

The judgment must be reversed and new trial ordered, with costs to abide the event, unless the plaintiff shall stipulate to reduce the recovery of damages by striking therefrom $574.11 (and any interest allowed thereon from the date of the referee's report to the entry of judgment) in which event, the judgment as so modified is affirmed, without costs of the appeal to either party.

MARTIN and MERWIN, JJ., concurred.

So ordered.