FREDERICK REISERT, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

*Municipal corporation exhausting the water in adjacent land by means of driven wells — remedies of the owner — damages at law, measured by the rental, not the productive value — proof of the latter as a basis for the former — Statute of Limitations — mode of assessing damages which can be estimated in more than one way.*

Where a municipality, by means of driven wells and pumps located upon land owned by it, removes the water appurtenant to the adjoining premises for distribution and sale to the inhabitants of the municipality, the owner of the adjoining property may maintain successive actions at law to recover the damages sustained by him until the wrong is abated, or he may bring an equitable action to restrain the municipal corporation from operating its pumps until it has acquired the property rights of such owner in the water appropriated by it.

If the owner of the adjoining property, which was used for farming, market gardening and as a fish and game preserve, elects to bring an action at law to recover damages, the measure of such damages is the rental value of the premises during the time that the wrong has continued and not the income which the owner would have derived from the cultivation of the land during that time but for the wrongful conduct of the municipality.

Evidence of the use to which the land has been dedicated by the owner, the quantity of produce it has raised, its adaptability to such purpose, the quality of the water which flowed in the streams appurtenant thereto, the use to which such water was put in raising fish, etc., is proper as tending to show the rental value of the property, but not as furnishing a basis for the computation of damages.

The Statute of Limitations is a bar to the recovery of any damages which have accrued more than six years prior to the commencement of the action.

Where damages may be estimated in more than one way, that mode should be adopted which is most definite and certain, even though full compensation will not be obtained thereby, provided the redress afforded is not grossly inadequate.

APPEAL by the plaintiff, Frederick Reisert, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 15th day of August, 1901, upon the decision of the court, rendered after a trial at the Kings County Special Term, awarding the plaintiff nominal damages.

*James C. Van Siclen*, for the appellant.

*R. Percy Chittenden* [*James W. Prendergast, Jr.*, with him on the brief], for the respondent.

WOODWARD, J.:

The question presented upon this appeal is the proper measure of damages in an action against the defendant for trespass in removing the water appurtenant to the plaintiff's premises, for distribution and sale to the inhabitants of the city of New York. All of the other questions of law, which might otherwise be raised, have been fully considered and determined in the cases of *Smith* v. *City of Brooklyn* (18 App. Div. 340; S. C., 160 N. Y. 357), and *Forbell* v. *City of New York* (47 App. Div. 371; S. C., 164 N. Y. 522), and we are to determine upon this appeal the measure of damages which should prevail in actions of this character. The rules governing the question appear to us to have been well defined, but the plaintiff urges with great earnestness that the damages awarded in the present action are based upon a wrong theory, and as the matter is of no inconsiderable importance to the public, as well as to those whose rights have been invaded in the search for an adequate water supply for a growing city, it may not be unprofitable to review the authorities upon the point involved. The action of the plaintiff is an appeal to the equitable jurisdiction of the court, and asks for the damages which he has already sustained, with a permanent injunction restraining the defendant from " the operation in any manner whatsoever of its wells, pumps, pumping station and appurtenances connected therewith, described in the foregoing complaint," and it is important to an understanding of the case that the facts underlying the action be stated.

It is not disputed that the plaintiff has been the owner of the premises described in the complaint since January 29, 1883. The property consists of about eighty-two acres of ground at Foster's Meadow, Nassau county and Queens county, State of New York, which we may assume had a special adaptability for market gardening purposes prior to the wrongful acts of the defendant, which are not disputed. In the year 1884 the then city of Brooklyn, in an effort to procure an adequate supply of pure and wholesome water for the use of its inhabitants, drove and constructed a series of wells and built and erected a pumping station and appurtenances connected therewith, upon property then owned by it at Foster's meadow aforesaid, and immediately adjoining on the north the said real property of the plaintiff. The defendant's

pumping station, to follow the allegations of the complaint, "is upon and at or near the source of Clear Stream which, previous to about the year 1884, was a fine natural running surface stream forming a part of the boundary line between the present counties of Queens and Nassau and separated the former town of Jamaica from the town of Hempstead * * * of a total length of about two miles, running in a southerly direction and eventually emptying into Jamaica Bay." It is also alleged that the pumping station was near the source of other streams in which the plaintiff had property rights, and that the operation of the pumps of the defendant has "dried up and kept dry the aforesaid streams, brooks, ditches, pools and wells along or on the above-described property of plaintiff, and has sucked and taken from, and continues to suck and take from said property and its soil all the natural underground waters which naturally remained therein, diverted and taken the percolating waters belonging to and which naturally came therein and thereto, and has rendered and renders said soil dry and worthless for cultivation, and said Clear Stream and said premises along the same valueless for fish and game purposes." The complaint further alleges that the defendant has done these things without right or permission from the plaintiff, and without the payment of compensation, and that the lands so drained prior to such wrongful acts on the part of the defendant produced and bore abundant and varied crops and vegetables, and that the business of market gardening and farming was profitable. It is also alleged that the premises of the plaintiff are not now adapted to any other purpose than that of market gardening, the keeping of game and fish preserves, and that the destruction of or depreciation to its fee and rental value cannot be made up or restored by any other use or disposition of the same. It is further alleged that if the operation of the pumps of the defendant was to cease, the said property would regain and be restored to its usefulness, fertility and value for the purposes aforesaid, and upon information and belief, that the defendant threatens and intends to continue permanently the said use and operation of the said wells and pumping station. By reason of these and other facts set forth in the complaint in great detail, the plaintiff alleges that he has been unable to carry on with profit his business of farming and gardening; that his crops and vegetables have either been destroyed,

are inferior in quality or quantity, or wholly unfit for market, although he has cultivated more ground, employed more labor, and used much more fertilizer than heretofore, and that his streams, brooks, ditches, pools and wells have been dried up, not only destroying his game and fish preserves, but causing a scarcity of water for the ordinary and necessary household and farming purposes, and putting plaintiff to great labor and expense in obtaining such water as was absolutely necessary; all to his damage, up to October 19, 1900, of the sum of $60,000. The defendant, answering, makes a general denial, and sets up as a defense the Statute of Limitations.

Upon the trial the court held that the Statute of Limitations operated as a bar only to so much of the claim as lay beyond the period of six years from the time of the commencement of the action, and the plaintiff insisted upon proving his income prior to the wrongful acts of the defendant, as well as the income which he might have derived from the operation of his farm if it had not been for the diversion of the water, his theory being that he had a right to recover the difference between what he might have raised with the water, and what he actually did raise without it. The learned trial court excluded this line of proof for this purpose, though admitting that it was competent for the purpose of aiding in determining the fee and rental value of the plaintiff's premises. The plaintiff refused to accept this view of the question, and the learned court gave judgment for the plaintiff for six cents damages and refused injunctive relief. From the judgment entered appeal comes to this court.

The plaintiff, who appeals, urges that all of the points involved in the case at bar, including that of the proper measure of damages, were raised and disposed of in *Smith* v. *City of Brooklyn* and *Forbell* v. *City of New York* (*supra*), and that said cases, taken together, form a mandatory precedent for the proper disposition of this case. We are willing to agree with the appellant in the main, but we are unable to discover that the question of the proper measure of damages has been determined, at least in a manner which would be satisfactory to the plaintiff, for we find no intimation in the able discussions which those cases underwent that the plaintiffs

were allowed to recover the profits which they might have made in the cultivation of their premises but for the interference of the defendant, and we are of opinion that the courts have not established such a rule. The rule is well supported by authority that where the damages may be estimated in more than one way, that mode should be adopted which is most definite and certain (8 Am. & Eng. Ency. of Law [2d ed.], 611; *Griffin* v. *Colver*, 16 N. Y. 489, 495), and this rule applies, even though full compensation will not be accomplished thereby, provided the redress afforded is not grossly inadequate. (8 Am. & Eng. Ency. of Law [2d ed.], 612, and authority cited in note 2.) If we apply to this case the knowledge which comes of common observation, it is certain that no definite or proper measure of damages is to be arrived at by the line of evidence proposed by the plaintiff. How are we to determine what results would have followed the planting and harvesting of successive crops upon this farm? How are we to know that potato bugs might not have destroyed the crop; that rust would not have impaired the value of the celery, or that his fish might not have died from other causes, or been stolen? How are we to know even that the farm would have been operated, and, if it had been, what portion thereof would have been cultivated, how much of it used for potatoes in each year, how much for celery? The fact that the plaintiff may have made $4,000 in the operation of the farm in one year is no evidence that he would gain an equal amount in the next year, or that he would have any return above the value of his labor. It is all speculative, contingent and remote, and cannot be relied upon to accomplish justice. (*Rochester Lantern Co.* v. *S. & P. P. Co.*, 135 N. Y. 209, 217, and authorities there cited.) In *Griffin* v. *Colver* (*supra*) the court reviews some of the earlier authorities upon the measure of damages in analogous cases, and reaches the conclusion that "from these authorities and principles it is clear that the defendants were not entitled to measure their damages by estimating what they might have earned by the use of the engine and their other machinery had the contract been complied with. Nearly every element entering into such a computation would have been of that uncertain character which has uniformly prevented a recovery for speculative profits," and the case is not rendered more certain where the contingencies of growing, harvesting and marketing the products of a

farm during a series of years is involved. In the same case the court say : " The rent of a mill or other similar property, the price which should be paid for the charter of a steamboat, or the use of machinery, &c., &c., are not only susceptible of more exact and definite proof, but in a majority of cases would, I think, be found to be a more accurate measure of the damages actually sustained in the class of cases referred to, considering the contingencies and hazard attending the prosecution of most kinds of business, than any estimate of anticipated profits, just as the ordinary rate of interest is upon the whole a more accurate measure of the damages sustained in consequence of the non-payment of a debt than any speculative profit which the creditor might expect to realize from the use of the money. It is no answer to this to say that, in estimating what would be the fair rent of a mill, we must take into consideration all the risks of the business in which it is to be used. Rents are graduated according to the value of the property and to an average of profits arrived at by very extended observation ; and so accurate are the results of experience in this respect that rents are rendered nearly, if not quite as certain, as the market value of commodities at a particular time and place." The doctrine of this case, with its reasoning, is quoted with approval in *Witherbee* v. *Meyer* (155 N. Y. 446, 450) and has been uniformly followed. In the case cited it was laid down as the established law of this State that a breach of contract to furnish water power to run a grist mill in a proper and efficient manner is the difference between the rental value of the mill and machinery with the power contracted for and its rental value with the power actually furnished, and we apprehend that this is the measure of past damages in the case of a trespass, such as has been found to exist in the case at bar, where the defendant has invaded the property rights of the plaintiff, rendering his land less useful. That is, we are of the opinion that the defendant, being endowed with the power of eminent domain, cannot be held to a higher rate of damages than would result from a breach of contract. To justify an award of exemplary damages the evidence must show on the defendant's part malice or fraud, or gross negligence (*Powers* v. *M. R. Co.*, 120 N. Y. 178, 182), and not such a public purpose as is here involved. The suggestion of the court in *Forbell* v. *City of New York* (164 N. Y. 522, 527) that " the

defendant can employ the right of eminent domain and thus provide its people with water without injustice to the plaintiff," indicates that the court had in mind the right of a municipal corporation to take private property upon the payment of just compensation, which must always be the fair value of the property taken, whether such taking is of the fee or an easement, or any other element of property. If the defendant had the right to take the plaintiff's property upon the payment of just compensation, the measure of damages must depend upon the value of the property taken; and, as the defendant has not elected to make use of its power, it must be liable in damages for the rental value of the property which it might have taken in the first instance up to the time that it does exercise its power of eminent domain. To determine the value of the property taken, as well as the rental value, evidence of the use to which the farm had been dedicated by its owner, the quantity of produce which it had raised, its adaptability for such purposes, the quality of the water which flowed in his streams, the use to which such water was put in raising fish, etc., was proper, but it could not form the basis of damages, except as it tended to fix the value of the property. (See *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 136 N. Y. 543, 545, 546 ; *Spencer* v. *Kilmer*, 151 id. 390, 401 ; *Sayre* v. *State*, 123 id. 291.) In the latter case the State had negligently overflowed the land of the plaintiff, who had been deprived of its use for twenty-four years, and the rule of damage held by the court was the annual rental value, with the cost of restoring the land to its original condition after the State had taken care of the water.

In *Rumsey* v. *N. Y. & N. E. R. R. Co.* (133 N. Y. 79, 83), where a railroad company had constructed its tracks in such a manner as to cut off the plaintiffs, the owners of a brick yard property, from the Hudson river, which they had long used as a means of transporting their product to market, the court recognizes the right of the railroad company to acquire the property rights of the plaintiffs under the power of eminent domain, or by purchase, and, where this had not been done, the court say : " The proper measure of damages in such a case is the diminished rental or usable value of the property as it was, in consequence of the loss by defendant's acts of access to the river in the manner enjoyed by the owner prior to the construction of the embankment across the water front by

the defendant." (See S. C., 136 N. Y. 543.) So in the case of *Francis* v. *Schoellkopf* (53 N. Y. 152) it was held that where one maintains a nuisance upon his lands which renders the premises of his neighbor disagreeable and uncomfortable, the proper measure of damages is the difference in the rental value free from the effects of the nuisance and subject to it. (See *Jutte* v. *Hughes*, 67 N. Y. 267.)

In *Colrick* v. *Swinburne* (105 N. Y. 503) the defendant diverted the water of a spring from its natural channel, whereby the plaintiff's intestate was deprived of its use for his tannery, and the rule of damages under the circumstances of that case was said by the court to be " the diminished rental value of the tannery premises for the purposes of that business during the period of diversion."

We quite agree with the appellant in the proposition that the defendant has no right to compel the plaintiff to condemn his own property. The action of the defendant in trespassing upon the rights of the plaintiff is a continuing wrong, and this case comes within the convenient and just rule, sanctioned by all of the authorities in this State and by the great weight of authority elsewhere, that recoveries in such cases may be had in successive actions until the wrong or nuisance shall be terminated or abated. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98, 126; *Stowers* v. *Gilbert*, 156 id. 600, 604, 605.) The plaintiff might, for the purpose of avoiding a multiplicity of suits, bring an equitable action to restrain the defendant from operating its pumps until it had acquired the property rights of the former, but he is not obliged to do so, and he may bring successive actions for the recovery of his damages. (*Galway* v. *M. E. R. Co.*, 128 N. Y. 132, 146.) But this point does not help the plaintiff, for he insists upon a measure of damages which has never been recognized in this State, and as he has nominal damages in the present action, he may bring a new action for damages which will accrue to him from day to day, so long as the defendant continues to trespass upon his rights of property. (*Galway* v. *M. E. R. Co., supra.*) In this way he may compel the defendant to condemn the property and to pay him a just compensation for the same, but he will hardly be able to recover the profits which might have been realized upon crops which were never produced, if they had been of the standard of such crops and

the market prices of the goods had been the same, and none of the crops had been spoiled by the action of the elements, the trespasses of individuals and the thousand and one contingencies which surround the growth, development, harvesting and marketing of agricultural products. " The rule of damages is settled in this State as to trespasses on land. In a case where the defendant has the power to condemn the property he has entered upon (illustrated in the elevated railway cases), the plaintiff proceeds in equity for injunction or for his permanent damages. The plaintiff, if he receives the amount of the permanent damages, is by the court compelled to convey the interest to the defendant which the latter pays for in that way and condemnation proceedings are thus avoided. It is conclusively determined that the trespass is to be continuous and the defendant concedes it when he avails himself of the condition and pays the permanent damage in order to receive the conveyance. It is only in this way that the plaintiff recovers as for a permanent damage to his property." (*Stowers* v. *Gilbert, supra,* citing authorities.)

The elevated railroad cases afford the rule of damages to be applied in this case, and in *Tallman* v. *M. E. R. R. Co.* (121 N. Y. 119, 124) the court, in discussing a case where the defendant was a continuing trespasser, say : " He can only recover the damages he sustains from day to day, or from month to month, or from year to year, in the use of his lots, and the question to be determined in such an action is, how much has the rental or usable value of the lots been diminished by the construction, maintenance and operation of the railway ? As a basis for estimating the damages, the lots must be taken as they are used during the time embraced in the action, and the plaintiff's recovery must be confined to the diminished rental or usable value of the lots just as they were. He was in no way prevented from putting his lots to any use he wished. He had the right, acting reasonably, not wantonly or rashly, to put upon them any structures which he deemed most to his advantage, and, at any and all times, until the railway company acquired as against him the right to maintain and operate its road in Fifty-third street, he had the right to recover the diminished rental value of his lots occasioned to them, just as they were, by the maintenance and operation of the road. But he could not be permitted to prove or

allowed to recover such damages as he might have sustained if he had put his lots to other uses or placed upon them other structures. Such damages would be purely speculative and contingent. The plaintiff had owned these lots for about twelve years before the railway was constructed without making any substantial improvements upon them, and they remained in the same condition down to the commencement of the action. * * * Upon the trial he was permitted to prove what it would have cost to erect the dwelling houses upon the lots, and what they would have rented for after they were constructed, and also to give evidence of the amount for which they would have rented if the railroad had not been constructed, and the jury evidently took this evidence into consideration in fixing the amount of damages which they awarded the plaintiff. There can be no certainty that the plaintiff would ever have erected dwelling houses upon the lots, and there could be no certainty as to the rents which could have been obtained from them either with or without the railroad in the street; and the defendant was permitted by the rule adopted in the court below to have all the advantages which he could derive from keeping his lots substantially vacant and ready to sell as such, and at the same time to have all the advantages, without the investment of any money and without any risk, which he could have derived from their improved condition. He was simply entitled to the damages caused to him in the use of his lots from the defendant's interference with his easements of light, air and access; and such damages are necessarily, and from the very nature of the case, such only as flowed from the interference with such easements during the time covered by the action. If he desired a more ample indemnity for the injury he suffered from the railway in front of his lots, he should, by an equitable action, have compelled the defendant, either by agreement with him to pay his damages, or to acquire the right by condemnation proceedings to interfere with and take his easements. Any other rule would open upon the trial in every case like this an inquiry into all the possible uses to which the abutting owner might put his premises; and damages, instead of being awarded upon any certain or probable basis, would rest mainly upon conjecture and speculation." (See *Hartman* v. *Tully Pipe Line Co.*, 71 Hun, 367; *Gillett* v. *Trustees of Kinderhook*, 77 id. 604; *Reichert*

v. *Backenstross*, 71 id. 516.) In the latter case the plaintiff was permitted to testify as to the value of certain land, flooded through the wrongful act of the defendant, if the water had not been turned upon it. The General Term of the fourth department, modifying the judgment of the County Court, held that a recovery based upon such a calculation was erroneous, and that the measure of damages should be limited to the fair value, as established by evidence in the case, of the use for the year in question of the land actually flooded, which was lost to the plaintiff by reason of the flooding thereof, together with the cost of closing the ditch. (See *Storm* v. *New York El. R. R. Co.*, 82 Hun, 11.)

We have examined the cases cited by the plaintiff, and a large number of authorities which a diligent search has discovered to us, but without finding a single precedent which may be fairly said to support the plaintiff's contention that he is entitled to measure his damages by the value of the crops which he thinks he might have raised upon his farm but for the wrongful conduct of the defendant. Where the damages resulted from a trespass upon real estate, the rule is universally applied that the rental value of the premises during the time that the wrong continues is the measure of damages which may be recovered, unless there is a permanent damage to the fee, or there is an expense involved in restoring the premises to their original value, in which case these items are included. In no adjudicated case, so far as we have been able to discover, is there a recognition of the right to recover for profits which might have been realized but for the trespass, and it is not to be expected that the court of last resort will consent to a modification of the salutary rule by which all former questions of this character have been adjusted. (See *Sperb* v. *M. E. R. Co.*, 137 N. Y. 155, 162.)

We do not find any evidence of fraud or deceit on the part of the defendant which would justify a court of equity in disregarding the Statute of Limitations, and we are of opinion that the ruling of the court upon this point was within the law, and that the plaintiff cannot recover for any loss prior to six years from the commencement of this action. (*Galway* v. *M. E. R. Co.*, *supra* ; *Arnold* v. *H. R. R. R. Co.*, 55 N. Y. 661.) This, of course, takes out of consideration all question as to the value of the fish and game alleged to have been destroyed by the original failure of the water supply, owing to the

defendant's trespass, and we have only to examine the question whether the evidence warranted the court at Special Term in granting more than nominal damages in this action, or whether the exclusion of evidence offered by the plaintiff in support of his cause of action presents reversible error.   We should find no trouble in reaching the appellant's conclusion that it was error to exclude some of the evidence offered, were it not for the fact that plaintiff's counsel insisted upon objecting to the admission of the evidence for the purpose of establishing either the rental or fee value of the premises, and claimed the right to have it received for the purpose of showing the value of the crops which it was claimed might have been raised.   " Our claim, if your Honor please, is entitled for the loss of the crops, and your Honor will grant me an exception," is the language of the plaintiff's counsel upon the trial.   Again, he says : " And your Honor will grant me an exception to the question of rental and fee damage entirely ; we are relying upon our recovery for loss of crops."   Yet, again, he says : " I wish to indicate now upon the record that our cause of action and all of our testimony and evidence is for the purpose of showing the loss of crops, the loss of income from streams and the different pools and wells, and that our claim is simply that we are entitled, therefore, to injunctive relief and past damages."   The evidence which was sought to be developed, and which the plaintiff objected to, would have had some bearing upon the rental or fee value of the premises, but the plaintiff would not consent to its admission for this purpose, and is hardly in a position to urge error at this time, especially as the most of the testimony was admitted for the limited and proper purpose. Owing to the theory upon which the plaintiff tried this case, the evidence does not show anything more than nominal damages, though we are persuaded that the loss sustained has been quite considerable, and that there should have been a substantial judgment for the plaintiff.   We find no reason for disturbing the judgment ; the plaintiff elected to proceed upon an erroneous theory of the law, and he cannot complain if his evidence fails to establish the extent of his damages.   He is not, however, without a remedy ; he may bring a new action, or a series of actions, if the trespass is continued, and in this way compel the defendant to condemn the property and pay him a just compensation, or he may bring an action in

equity, showing the permanent nature of the trespass, and by proving the value of his property rights which have been taken, compel an adjustment of this question. He cannot, however, recover damages for the value of the crops which he thinks he might have raised; he will now have to be content with the damage to his fee, with such damages as may accrue to him from the time of the commencement of his last action, for he has closed the door to a new trial by his own mistake as to the measure of damages in actions of this character.

The judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.