(92 App. Div. 96.)

### HALL v. STATE.

(Supreme Court, Appellate Division, Third Department. March 2, 1904.)

1. EASEMENT—RIGHT TO FLOOD LANDS—INTERRUPTION OF USER.

Where one maintains a dam, which sets the waters back on the adjacent lands of other owners, there is no interruption in the continuity of the user or abandonment of the right to use, so as to affect his right to the easement of flooding the lands, though periodically, to suit his own pleasure and convenience only, and not on account of the landowners, he lets the water out to float logs.

2. LAW OF THE CASE.

A decision on appeal, unappealed from, as to the right to flood lands, is the law of the case on a new trial; the evidence, though of greater length, not being materially different.

3. APPEAL—INCREASING AWARD OF COURT OF CLAIMS.

On appeal from the Court of Claims its judgment should not be modified by increasing its award, where there are no findings, and the evidence may be materially changed on a new trial.

Appeal from Court of Claims.

Proceedings by Benjamin E. Hall against the state. From a judgment for claimant for $2,958.81, he appeals on the ground of insufficiency. Reversed.

See 77, N. Y. Supp. 282.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Walter B. Safford, for appellant.

John Cunneen, Atty. Gen., and S. S. Taylor, Dep. Atty. Gen., for the State.

CHESTER, J. The claimant and his sister Ermina P. Hall were owners of certain lands on both sides of the Saranac river. About 60 acres of these lands, including an undeveloped water power thereon, were appropriated by the state, pursuant to Laws 1898, p. 1480, c. 627. Such appropriation was made on the 13th day of December, 1898. The owners and the state were unable to agree upon the value of the property so appropriated or on the amount of damages resulting therefrom. Ermina P. Hall thereafter assigned to the claimant all her interest in the claim for damages for such appropriation,

and under the law the claimant presented the claim to the Court of Claims for determination. The case has been twice tried by that court. Upon the first trial the claimant was awarded $2,000 damages for the land appropriated. An appeal was taken from that judgment to this court, where the judgment was reversed upon the ground that the Court of Claims adopted an erroneous basis of value in fixing the damages. Hall v. State of New York, 72 App. Div. 361, 77 N. Y. Supp. 282.

One of the questions involved in the former appeal was whether the owners had acquired by prescription the right to erect a dam at the place in question, which would set the water of the stream back, and thereby overflow lands belonging to others, and it was decided that they had acquired such right, and that such a right was appurtenant to the lands and passed under a conveyance thereof. It was also decided that the claimant had not, by nonuser, lost such right, and that the evidence showed no intention to abandon it. The case has been again tried by the Court of Claims, and, notwithstanding the former decision of this court, upon evidence not essentially different from that on the former trial, but covering more completely the questions presented, that court has held that the claimant and his predecessors in title had acquired no prescriptive right to maintain a dam for the entire year, but for only eight months of the year, and that without the right to maintain the dam for the entire year the claimant had no merchantable water power which could be made the basis of damages. Nothing was, therefore, awarded him for the water power. This appears to be squarely in the face of the principle established by this court upon the former appeal, and which, until reversed, must stand as the law of the case.

Without attempting to review the evidence, it is sufficient to say that to our minds it shows clearly that for upwards of 50 years the predecessors in title of the claimant and those acting with them had maintained a dam at the place in question 9½ feet high, which set the waters back upon the adjacent property of other owners at all times when it suited their convenience to do so. While the evidence does not show that the flooding had been absolutely continuous during all of that time, because of breaks and leakages in the dam, and because of letting the water out of the dam at certain times to float logs in the river below, it does show that these persons exercised the right to overflow the lands during that time at will. There is nothing in the evidence that these periodical cessations in the continuity of the flooding showed any intention of abandoning the right to flood whenever they desired. Nor did such cessation come from any act or interference of the owners of the uplands. The fact of flooding and of impounding the waters and of their use appear to have been dependent wholly upon the pleasure and will of the owners and of the person operating the dam by their leave. Under such circumstances there is no interruption in the continuity of the user or abandonment of the right to use. Nonuser does not affect the right to the easement unless the circumstances show an inference of abandonment. There must be an overt act indicating that the right is

disturbed. Jones on Easements, § 189; Washburn on Easements (4th Ed.) 170–172.

It is said in 28 Am. & Eng. Enc. of Law (1st Ed.) p. 1009, that:

"The adverse use, in order to ripen into a prescriptive right, must be continuous during the whole period; but this does not mean that it must be constant, in the sense of daily use. When one uses the water whenever he sees fit without asking leave and without objection, the use is sufficiently continuous, and a grant may be presumed." ·

The same principle is held in numerous other authorities: Cornwell Mfg. Co. v. Swift, 89 Mich. 503, 50 N. W. 1001; Messenger's Appeal, 109 Pa. 290, 4 Atl. 162; Bodfish v. Bodfish, 105 Mass. 317; Land Co. v. Rogers, 83 Cal. 10, 23 Pac. 196, 17 Am. St. Rep. 209; Garrett v. Jackson, 20 Pa. 331.

While the questions of nonuser and of abandonment were not discussed at length in the opinion upon deciding the former appeal, yet they were involved therein the same as here, and necessarily entered into the decision there made, which was adverse to the contention of the state. The evidence upon those questions, while of much greater length on the last trial than on the first, is not materially different from that considered by the court upon the former appeal, where it was decided that the claimant had a prescriptive right to maintain his dam and to overflow the uplands. That decision must control the determination of this appeal. The inconsistency of the state is clearly shown in its insisting that the claimant has no prescriptive right, in order to reduce the compensation it should make to him, and then, after taking his property away from him for a public use, proceed at once to the erection of a dam at the place in question without any right whatever to do so other or different from that possessed by the claimant or his predecessors in title. At the time it took his property, the prescriptive right which the claimant had to maintain a dam there was a property right, for which he was entitled to receive just compensation. That has been denied him in the court below, and he has simply been awarded what his property was worth per acre for camp sites.

There was testimony that the dam, the reservoir made thereby, and the water power were valuable for storage of water for uses below on the river, for generating electricity, for sawmill and for other manufacturing purposes. Several witnesses as to value testified on behalf of the claimant. One expert witness, who had been a former state engineer and surveyor, valued the right to build a dam 9½ feet high, and of the water power that would be produced by such a dam, at the time of the appropriation by the state, at the sum of $30,000. That estimate of value was, to a considerable extent, based upon the belief that there was a market in that vicinity for electricity that could be generated by such a water power. There is no very satisfactory evidence on behalf of the state, in this record, in denial of the fact that there was such a market. Upon another trial, however, it may appear more clearly just how much of a market is accessible there, and how much competition would be met in that neighborhood in the sale of electricity or of electric power. While we may have the power to modify a judgment by increasing the

award made by the Court of Claims upon findings of that court justifying such increase (Sayre v. The State of New York, 123 N. Y. 291, 25 N. E. 163), we do not think that in a case where there are no findings, and where the evidence might be materially changed upon another trial, we should do that.

The judgment should be reversed on the law, and on the facts, and a new trial granted in the Court of Claims, with costs of the appeal to the claimant. All concur.