WALTER R. SMITH, Respondent, *v.* THE CITY OF BROOKLYN, Appellant.

1. WATERCOURSES — UNDERGROUND DIVERSION OF WATER BY MUNICIPAL WATER WORKS. If a city, by the operation of a water system consisting of wells and pumps, on its own land, drains the contiguous territory, and thus diverts and diminishes the flow of water in a natural surface stream on the land of another, it is answerable in damages, under the rule that no one may divert or obstruct the natural flow of a stream for his own benefit, to the injury of another.

2. DIMINUTION OF NATURAL SURFACE STREAM BY UNDERGROUND INTERCEPTION. The water of a natural surface stream is for the benefit of all the riparian owners, and to divert or diminish its flow in any way, including an interception of underground waters, is an interference with a natural right, which will give rise to an action for the injury sustained.

3. DIVERSION OF PERCOLATING WATERS. Whatever may be the rule with respect to the right of a landowner to use the water percolating through the earth and thereby to affect the sources of wells or springs upon his neighbor's land, he may not divert and diminish the natural flow of a surface stream, by preventing its usual and natural supply, or by causing, through suction or other methods, a subsidence of its waters.

*Smith* v. *City of Brooklyn*, 32 App. Div. 257, affirmed.

(Argued June 12, 1899; decided October 10, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 20, 1898, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Whalen*, Corporation Counsel (*William J. Carr* of counsel), for appellant. The owner of land may dig ditches or sink wells, or in any other manner exercise his dominion over his own land, without being liable at law for the interception of any underground percolating waters consequent upon such use of his own property. (*Goodale* v. *Tuttle*, 29 N. Y. 459; *Pixley* v. *Clark*, 35 N. Y. 520; *Vil. of Delhi* v. *Youmans*, 45 N. Y. 362; *Bloodgood* v. *Ayers*, 108 N. Y. 400; *Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424; *Covert* v. *City of Brooklyn*, 6 App. Div. 73; *Acton* v. *Blundell*, 12 M. & W. 324; *Ranstrom* v. *Taylor*, 33 L. & Eq. 428; *Broadbent* v. *Ramsbotham*, 34 L. & Eq. 553.) A municipal corporation using its own land, for the purpose of obtaining a water supply for its inhabitants, possesses all the rights over its own property as to underground percolating waters, which are incident to the rights of an individual owner over his own soil. (*Chasemore* v. *Richards*, 7 H. L. Cas. 349; *G. J. C. Co.* v. *Shugar*, L. R. [6 Ch. App.] 483; *Mayor, etc.,* v. *Pickles*, L. R. [App. Cas. 1895] 587; *Proprietors, etc.,* v. *B. W. S. Co.*, 149 Mass. 478; *Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424.)

*George Wallace* for respondent. No person or corporation can divert a surface stream without becoming liable for damages thereby; the method of the diversion is of no consequence; it is just as unlawful to divert a stream by suction of the waters from beneath it, as it would be by turning the waters into another channel at the surface. (*Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424; *Bellinger* v. *N. Y. C. R. R. Co.*,

23 N. Y. 47; *Goodale* v. *Tuttle*, 29 N. Y. 466; *Pixley* v. *Clark*, 35 N. Y. 522; *Vil. of Delhi* v. *Youmans*, 45 N. Y. 362; *Barkley* v. *Wilcox*, 86 N. Y. 140; *Colrick* v. *Swinburne*, 105 N. Y. 503; *Bloodgood* v. *Ayers*, 108 N. Y. 405; *Covert* v. *Cranford*, 141 N. Y. 525; *Wheatley* v. *Baugh*, 25 Penn. St. 528.)

GRAY, J.   This action was brought to recover damages of the defendant for the draining of a stream and pond upon the plaintiff's premises.   The stream had existed in the same channel for very many years and the plaintiff, by means of a dam, had made a pond upon his premises.   He had made use of both in connection with his farming operations, for the collection and sale of ice and for boat-building purposes.   The defendant, at a distance of some 2400 feet to the south of the plaintiff's pond, had constructed an aqueduct for the purpose of conducting water for its municipal purposes and supplied the water from a reservoir, which was filled by means of wells and pumps upon its own land.   The allegations of the complaint, which charged the defendant with draining the plaintiff's watercourse and pond and with thus depriving him of their use, were denied by the answer and, upon the issue made by the pleadings, the parties went to trial.   There, after the plaintiff had given in evidence the facts upon which he relied, as proving, or tending to prove, that the direct cause of the stream running dry was in the draining of the territory by the defendant's construction of an extensive system of conduits, wells and pumps and the use of suction power, the latter undertook to meet the plaintiff's case by the testimony of its engineers and of experts, and to prove that the draining of the pond and stream were due to causes and conditions, with which either it was not connected, or for which it could not be held responsible.   In submitting the case to the jury, the trial judge instructed them that, upon the evidence, it was for them to determine what was the cause of the loss of water in the plaintiff's pond and that if the defendant did drain it for its purposes by the operation of its pumps

and conduits, it was responsible to the plaintiff for the damages sustained. The jury returned a verdict for the plaintiff and, upon appeal to the Appellate Division from the judgment entered thereon, that court directed an affirmance of the judgment by an order, which recited that the court had " unanimously decided that the verdict of the jury is supported by evidence." That decision has conclusively established that the defendant's acts caused the diversion and loss of waters in the stream and pond and is not subject to our review.

The legal question of the defendant's liability to respond in damages, in such an action, is no longer one which should be regarded as open to discussion. It is settled by the decision of the courts of this state, and it is the rule in England, that no one may divert, or obstruct, the natural flow of a stream for his own benefit, to the injury of another. (*Pixley* v. *Clark*, 35 N. Y. 520; *Van Wycklen* v. *City of Brooklyn*, 118 *ib.* 424; *Covert* v. *Crawford*, 141 *ib.* 521; *Chasemore* v. *Richards*, 7 H. L. 349 and *Grand Junction Canal Co.* v. *Shugar*, L. R. [6 Ch. App.] 483.) The right to the use and enjoyment of a stream of water, running in a defined and natural channel, *jure naturæ*, appertains to the riparian landowners. (*Shury* v. *Piggott*, 3 Bulstrode, 339; *Tyler* v. *Wilkinson*, 4 Mason C. C. 397.) In the *Van Wycklen Case* (*supra*), this same defendant, by sinking wells and pumping water into its reservoir, had caused a subsidence of the waters of a creek, by which the plaintiff operated a grist mill, and a recovery of damages was sustained. In the *Grand Junction Canal Company's Case* (*supra*), where the defense was made that the defendant had only intercepted underground waters, before they had reached the stream, the diversion of which was the subject of complaint, the defense was held to be insufficient. It was there observed by the lord chancellor that, " if you cannot get at the underground water without touching the water in a defined surface channel, I think you cannot get at it at all." All the cases hold that the water of a natural surface stream is for the benefit of all the riparian owners and that to divert, or to diminish, its flow in any way, is an interference

with a natural right, which will give rise to an action for the injury sustained.

That the diversion and diminution of the stream were caused by arresting and collecting the underground waters, which, percolating through the earth, fed the stream, does not affect the question. When the fact was established upon the proofs that the defendant's works and wells had caused, by this subsidence of water, a diversion of the stream's natural flow in its channel, the injury was proved and the plaintiff's cause of action established. Whatever may be the rule with respect to the right of a landowner to use, for any of his purposes, the waters percolating through the earth and, thereby, to affect the sources of wells or springs upon his neighbor's land, the question is not one which is suggested by the present case. It is one thing to divert and to diminish the natural flow of a surface stream, by preventing its usual and natural supply, or by causing, through suction or other methods, a subsidence of its waters; it may be another thing to collect and to use the waters which percolate through the earth in underground ways and channels without having connection with the supply of a surface stream. The latter question does not demand an answer upon the case before us.

The right of this plaintiff to the enjoyment of his running stream and to his pond was absolute; the diversion of the water therefrom by the defendant's operations was established as a fact by the verdict and the right of the former to maintain the action for the recovery of damages was clear.

I think the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.