FREDERICK REISERT, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

WATERCOURSES — MEASURE OF DAMAGES CAUSED BY DIVERSION OF SUB-SURFACE WATERS BY MUNICIPAL WATER WORKS. Upon the trial of an action brought by a landowner on Long Island against the city of New York to recover damages growing out of the construction, maintenance and operation by it and of its predecessor, the city of Brooklyn, of a system of driven wells and a pumping station operated for the purpose of supplying water to the former city, now borough of Brooklyn, the exclusion or striking out of evidence showing the nature, character and extent of the business that had been interrupted by defendant's trespass and the facts which would fix the diminished value of a farm conducted by the plaintiff, upon the ground that it was offered for the purpose of sustaining his contention that he was entitled to recover his loss of profits and not on the question of the rental or usable value of the premises, constitutes reversible error, since if admissible upon any theory of damages the evidence should have been received, and it was admissible in order to give the court or jury a correct general idea of the condition of the farm and

its productive value upon which they could base an estimate as to the fair or reasonable amount of damages suffered by the plaintiff, considering the effect of the trespass on the fee, rental or usable value of the property.

*Reisert* v. *City of New York*, 69 App. Div. 302, reversed.

(Argued March 4, 1903; decided March 24, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered March 17, 1902, affirming a judgment awarding nominal damages in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James C. Van Siclen* for appellant. The courts will always look for the best measure of damages which can be found. In the case at bar the rental value cannot be ascertained. A property owner cannot be damaged with impunity simply because he cannot or makes no attempt to rent his property. He is bound to show only existing facts and let the court or jury determine by the best means obtainable what his damages are. The doctrine that an injured party is not entitled to compensation for loss of business, or, if an owner of property, that he is entitled only to the depreciation of its rental value, or that if a going business or occupation be damaged it must be abandoned, or that the injured party is prohibited from computing the reasonable receipts which would have come to him if let alone, is not founded on or supported at law or equity. (*Forbell* v. *City of New York*, 47 App. Div. 371; 164 N. Y. 522; *P. Ice Co.* v. *Excelsior*, 44 Mich. 229; *C., etc., R. R. Co.* v. *Schaffer*, 26 Ill. App. 280; *Magee* v. *City of Brooklyn*, 18 App. Div. 22; *Armstrong* v. *Smith*, 44 Barb. 120; *Smith* v. *City of Brooklyn*, 160 N. Y. 357; *Gallagher* v. *Water Co.*, 25 App. Div. 82; *Schile* v. *Brokhahus*, 80 N. Y. 614; *Griffin* v. *Colver*, 16 N. Y. 489; *Brown* v. *Otto*, 40 Md. 15.) The exceptions to the exclusion of evidence of the yield of plaintiff's land, both before and

after the pumping, loss of crops and loss of profits, were well taken. (*Schile* v. *Brokhahus*, 80 N. Y. 614; *Lacour* v. *Mayor, etc.*, 3 Duer, 406; *Gallagher* v. *K. W. Co.*, 25 App. Div. 82.)

*Charles Coleman Miller*, intervening. The rule that plaintiff may recover for loss of crops and damage to his business is the correct rule. (*L. P. Co.* v. *State of N. Y.*, 45 App. Div. 112; *Woolsey* v. *E. L. R. R.*, 134 N. Y. 326; *Randall* v. *U. S. L. Co.*, 72 App. Div. 317; *Weeks* v. *State*, 48 id. 357; *Snow* v. *Pulitzer*, 142 N. Y. 263; *Covert* v. *City of Brooklyn*, 6 App. Div. 73; *Schile* v. *Brokhahus*, 80 N. Y. 620; *Armstrong* v. *Smith*, 44 Barb. 120; *Armbruster* v. *A. G. Co.*, 18 App. Div. 447; *Seamans* v. *Smith*, 46 Barb. 320.) A landowner cannot be limited in the use of his land by a trespasser. (*Corning* v. *T., etc., Factory*, 40 N. Y. 191, 206; *Tallman* v. *M. E. R. R. Co.*, 121 N. Y. 119, 124; *Storm* v. *N. Y. El. R. Co.*, 82 Hun, 11; *Shepard* v. *M. E. Ry. Co.*, 48 App. Div. 452; *Bly* v. *E. E. R. Co.*, 172 N. Y. 1.)

*George L. Rives*, Corporation Counsel (*R. Percy Chittenden* and *James McKeen* of counsel), for respondent. The measure of damages adopted by the trial judge, the fee and rental depreciation of the plaintiff's land resulting from the injury occasioned by the maintenance and operation of the Clear Stream pumping station, is correct. (*C. & E. R. R. Co.* v. *Barnes*, 10 Ind. App. 460; *I. & G. N. R. R. Co.* v. *Benitos*, 59 Tex. 326; *Gresham* v. *Taylor*, 55 Ala. 505; *Hayes* v. *Crist*, 4 Kan. 350; *Ry. Co.* v. *Yarborough*, 56 Ark. 612; *Donovan* v. *Clark*, 138 N. Y. 631; *Wyse* v. *Wyse*, 155 N. Y. 367; *McGean* v. *M. R. R. Co.*, 117 N. Y. 219; *Witmark* v. *N. Y. El. R. R. Co.*, 149 N. Y. 397.) The refusal of the trial court to accept evidence of loss of profits as the basis of damages is founded on reason and authority. (*Witherbee* v. *Meyer*, 155 N. Y. 446; 3 Sedgwick on Damages [8th ed.] §§ 941, 942; *Chase* v. *N. Y. C. R. R. Co.*, 24 Barb.

273; *Esterbrook* v. *E. R. R. Co.*, 51 Barb. 94; *Drake* v. *C., R. I. & P. R. R. Co.*, 63 Iowa, 302; *City of Chicago* v. *Huennerbein*, 85 Ill. 594; *Stowers* v. *Gilbert*, 156 N. Y. 600; *Griffin* v. *Colver*, 16 N. Y. 489; *Powers* v. *M. R. Co.*, 120 N. Y. 178; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 136 N. Y. 543; *Francis* v. *Schoelkopf*, 53 N. Y. 152.) The measure of damages is the diminished rental and fee value of the abutting property, occasioned by the invasion of the easements which in themselves have only a nominal value. (*Bohm* v. *M. El. R. Co.*, 129 N. Y. 587; *A. B. N. Co.* v. *N. Y. El. R. R. Co.*, 129 N. Y. 271; *Sloan* v. *N. Y. El. R. R. Co.*, 137 N. Y. 595; *Storck* v. *M. E. R. R. Co.*, 131 N. Y. 514; *Rumsey* v. *M. El. R. R. Co.*, 133 N. Y. 79; *Tallman* v. *M. El. R. R. Co.*, 121 N. Y. 124; *Lawrence* v. *M. R. R. Co.*, 126 N. Y. 483; *Scott* v. *M. Ry. Co.*, 42 N. Y. S. R. 69; *Woolsey* v. *N. Y. El. R. R. Co.*, 134 N. Y. 323; *Johnson* v. *M. Ry. Co.*, 62 Hun, 111.)

BARTLETT, J. This action is brought by a landowner on Long Island against the city of New York to recover damages growing out of the construction, maintenance and operation by it and its predecessor, the city of Brooklyn, of a system of driven wells and a pumping station operated for the purpose of supplying water to the former city, now borough, of Brooklyn.

The Special Term, while finding that the maintenance and operation of these wells and·pumping station constituted a trespass against the plaintiff in and upon his land, and thereby lowered the ground water or water table on the same, held that he had nevertheless suffered only nominal damages and was not entitled to the ʽinjunction for which he prayed as equitable relief. Thereupon a judgment was entered to that effect, which was unanimously affirmed by the Appellate Division.

This appeal presents the sole question as to the measure of damages in actions of this kind.

Since the year 1884 the city of Brooklyn and its successor,

the city of New York, have been operating a large number of these pumping stations and driven wells, and it is a matter of great importance that a proper and workable rule of damages should be laid down for the guidance of the trial courts.

The plaintiff is the owner of a farm consisting of about eighty acres, located at Foster's Meadow, in the counties of Queens and Nassau. The wells and pumping station of the defendant are located between two and three hundred feet north of plaintiff's premises. This farm has been owned by the plaintiff and his father before him since the year 1850, and prior to the trespass complained of abounded in running streams, brooks, ditches, pools and wells that furnished an abundance of water for farming, gardening, fishing preserves and domestic purposes. The land is a rich loam with sand underneath and was well supplied with water and moisture, very fertile and peculiarly adapted to the growing of crops and vegetables for the city market. This business had been conducted by the father and son for many years and is alleged to have been very profitable.

The operation of these wells and pumping station has dried up all the streams, brooks, ditches, pools and wells on the farm and rendered dry and largely unproductive the soil, with the result that the business of raising vegetables and other products for the city market was greatly impaired if not destroyed.

This court in *Smith* v. *City of Brooklyn* (160 N. Y. 357) settled the law that the defendant is liable in damages in operating these pumping stations and driven wells where it diverts and diminishes the flow of water in natural surface streams on the land of another. This principle renders the defendant liable for all damages that plaintiff can properly establish for interference with his surface streams, brooks, ditches, pools, etc.

In the case of *Forbell* v. *City of New York* (164 N. Y. 522) this court decided a further question in regard to the maintenance of these pumping stations and wells and their effect upon sub-surface and percolating waters. The court

said, referring to defendant : " In the absence of contract or enactment whatever it is reasonable for the owner to do with his sub-surface water, regard being had to the definite rights of others, he may do. He may make the most of it that he reasonably can. It is not unreasonable, so far as it is now apparent to us, that he should dig wells and take therefrom all the water that he needs in order to the fullest enjoyment and usefulness of his land as land, either for purposes of pleasure, abode, productiveness of soil, trade, manufacture, or for whatever else the land as land may serve. He may consume it, but must not discharge it to the injury of others. But to fit it up with wells and pumps of such pervasive and potential reach that from their base the defendant can tap the water stored in the plaintiff's land, and in all the region thereabout, and lead it to his own land, and by merchandising it prevent its return is, however reasonable it may appear to the defendant and its customers, unreasonable as to the plaintiff and the others whose lands are thus clandestinely sapped and their value impaired."

It is urged by plaintiff's counsel that the court is concluded by this case on the question of the right of the plaintiff to recover his loss of profits as the proper measure of damages. On the other hand, the defendant insists that this court did not discuss or consider the rule of damages. It, therefore, becomes necessary to examine the record of the case cited.

The complaint discloses that the plaintiff was the lessee, and had been for twenty-five years, of eight and one half acres of ground situated in the county of Kings, in the extreme easterly part of the borough of Brooklyn, near the boundary line of Queens county ; that the soil of said property consisted of from two to three feet of rich loam on the surface, under which is clean sand ; that said soil is entirely saturated with water and is very fertile, and is particularly well adapted to the growing of garden vegetables and flowers for the market. It is further alleged that the operation of the pumps and driven wells has entirely dried up and keeps dry the ditches, trenches and wells on the property, and has sucked

and continues to suck from said property and its soil all the natural underground and percolating waters belonging to the same, and has rendered and still renders the soil dry and worthless for cultivation. It thus appears that the plaintiff had leased a small piece of ground within the limits of the borough of Brooklyn in order to prosecute the business of growing garden vegetables and flowers for market.

These facts distinguish the case from the present action in several particulars that need not be discussed at this time.

In the case at bar we have the plaintiff owning the fee of a large farm under circumstances to which reference has already been made, and it remains to determine the rule of damages as controlled by the facts disclosed.

As the Appellate Division has unanimously affirmed the judgment of the trial court, we are precluded from an examination of the facts to determine whether they support the conclusion of law that this plaintiff was entitled to only nominal damages. If any rights are preserved to the plaintiff on this appeal they must be found in his exceptions to the admission and exclusion of evidence and to the decision of the trial court.

The counsel for the plaintiff insisted throughout the trial that he was entitled to recover his profits, as such, which he was able to prove, during the six years preceding the commencement of the action.

The counsel for the defendant contended that the plaintiff's recovery was limited to the loss in rental value which might be proved as resulting from the trespass of the defendant.

The learned trial judge announced early in the trial that he would rule that only damages for rental and fee value would be allowed. The record abounds in many discussions between the trial judge and plaintiff's counsel as to the proper rule of damages and the evidence admissible under the same. The record also discloses a large number of exceptions taken by the plaintiff's counsel which are sufficient to raise the question of law we are about to consider; it would be a useless task to single them out and consider them in detail.

Evidence that the trial judge seemed to regard as competent on the question of rental or usable value of the premises was ruled out on the ground that the plaintiff's counsel offered it for the purpose of sustaining his contention that plaintiff was entitled to recover his loss of profits during the six years prior to the commencement of the action.

It is clear that if such evidence was admissible upon any theory of damages it should have been received.

The learned Appellate Division said: "We should find no trouble in reaching the appellant's conclusion that it was error to exclude some of the evidence offered if it were not for the fact that the plaintiff's counsel insisted upon objecting to the admission of the evidence for the purpose of establishing either the rental or fee value of the premises, and claimed the right to have it received for the purpose of showing the value of the crops which it was claimed might have been raised."

The rule of damages and the weight to be given to the evidence received were to be determined by the trial judge, and the fact that the plaintiff's counsel insisted that the proof should be limited, as tending to establish the rule of damages for which he contended, did not render it inadmissible.

The trial judge handed down a written opinion at the close of the case wherein he stated his views as to the rule of damages, and from which we will quote, as it may be regarded as a fair summing up of his numerous fragmentary opinions rendered during the progress of the trial when excluding evidence offered by the plaintiff. The opinion states: "The proof by which the recoverable general damages may be established does not seem to be well understood. If such lands were commonly rented the ordinary rentals would furnish a perfectly simple and reliable means of fixing the damage, but they are not. Of course, evidence of the extent of the actual subtraction of water is competent, and evidence also of what the land is capable of producing on one hand with the water and on the other without the water. Such facts lay some foundation, more or less unsatisfactorily of course, for an opinion by experienced cultivators as to the

annual value of its use, meaning by that what rent one actu-
ally desiring to rent could afford and would probably be will-
ing to pay, not losing sight of what such land could be bought
for out and out.    But this class of evidence should be limited
to quantity and quality of products and the other side of the
account should be limited to quantity (as distinguished from
cost) of labor, seed and fertilizers required for the production.
The actual history in any respect of any particular year,
either before the water was taken or since, should not be
allowed to be proved (on the question of general damage),
because not only is an issue thus presented in which the
defendant is utterly at the mercy of the unscrupulous plain-
tiff, but the issue is wholly irrevelant; for, whatevever annual
return the figures may show, a large part of it must be
deemed the fruits of the proprietor's labor and skill and
not of the land, and the value of the use of the land is not
arrived at, but only the value of the use of the land in com-
bination with the proprietor's skill and attention, which last
is an uncertain and undeterminable factor.    The value of the
land in question for the purpose of sale and purchase with
the water on one hand, and permanently deprived of it on the
other hand, is the safest and most reliable basis for such
a conclusion as to general damage.    *    *    *    In this case
the plaintiff paid six thousand five hundred dollars for his
farm.    There is no reason to believe it has since increased in
value, and the plaintiff gave no evidence that its sale value
has decreased.    Three hundred and twenty-five dollars and
taxes is the uttermost limit of its annual value before the
water was taken, and there is no evidence to warrant a con-
clusion that its use since then for some purpose has not been
that sum."

The trial judge had previously announced that the farmers
who have recovered against the city in cases of this class upon
a basis of annual values in excess of five per cent of the sale
value will have accomplished a manifest fraud; he also
intimated that it was impossible to contemplate plaintiff's claim
without that instinctive hostility which every attempt to

deceive the court and by its aid work out a fraud deserves, when his farm was worth only sixty-five hundred dollars and he nevertheless claimed damages to the amount of seventy-five thousand dollars.

It should be remarked, in passing, that the plaintiff sought to recover past damages covering a period of some sixteen years, and that the trial court properly limited the time of recovery to six years immediately preceding the beginning of the action. (*Colrick* v. *Swinburne,* 105 N. Y. 503; Code of Civil Procedure, § 381.)

It is also to be observed that the plaintiff in his complaint asked to recover the sum of sixty thousand dollars past damages; and the limitation placed upon the period of his recovery reduces his claim to less than twenty-three thousand dollars and interest. The prayer for judgment, however urgent and comprehensive, ought not to consign the plaintiff to the limbo of suspicion and attempted fraud.

The trial judge states, as above quoted, that if the plaintiff's lands were commonly rented, the ordinary rentals would furnish a perfectly simple and reliable means of fixing the damage, but as they were not, the value of the land in question, for the purpose of sale and purchase, with the water on one hand and permanently deprived of it on the other, is the safest and most reliable basis for such a conclusion as to general damage.

Assuming this to be the fact, the question presented for solution is, whether, if it is sought to ascertain the fee value, or the rental or usable value of the plaintiff's farm, what line of proof is admissible to accomplish that result.

We have here a farm that has been in the possession of one family since the year 1850, upon which has been conducted by father and son the business of raising vegetables and other products for the city market. In other words, a going and profitable business, which gave to these premises a peculiar value, as distinguished from the ordinary farm, devoted to the usual purposes of such property, when remote from the great centers of population.

It is clearly unreasonable to say that the price of sixty-five hundred dollars, paid by this plaintiff for the farm to a member of his own family, and without any proof as to its actual value, in view of the purposes for which it was used, is to be regarded as a basis for figuring an income of five per cent and taxes, which is to be deemed " the uttermost limit of its annual value " before the defendant's trespass.

Near the close of the trial the presiding judge suggested that the plaintiff should produce witnesses, who could swear to the fee and rental value of this farm before and after the trespass, in order to fix the amount of plaintiff's damages.

The opinions of such witnesses, under the conditions surrounding this property, would be of little, or no value, unless based on evidence to which we shall presently refer.

The statement of plaintiff's counsel, that he found difficulty in obtaining such witnesses, was perfectly reasonable under the circumstances.

It has often been said that a landowner cannot be limited in his use of premises by a trespasser. We have here a going and profitable business at the time the defendant entered upon plaintiff's farm as a trespasser, which we may assume, for the purposes of this discussion, has been greatly damaged, if not practically destroyed.

In order to furnish a foundation of fact upon which a trial judge, a jury or an expert could base a judgment as to the fee, rental or usable value of the property before and after the trespass, and the damages resulting therefrom, it would seem that the only reasonable way would be to prove the nature, character and extent of the business that had been thus interrupted by defendant's trespass and the facts which would fix the diminished value of the farm as a result of such interruption.

In *Rochester L. Co.* v. *S. & P. P. Co.* (135 N. Y. 209, 217) this court remarked : " It is frequently difficult in the administration of the law to apply the proper rule of damages, and the decisions upon the subject are not harmonious. The cardinal rule, undoubtedly, is, that the one party shall recover all the

damage which has been occasioned by the breach of the contract by the other party. But this rule is modified in its application by two others: The damages must flow directly and naturally from the breach of the contract, and they must be certain, both in their nature and in respect of the cause from which they proceeded. Under this latter rule, speculative, contingent and remote damages which cannot be directly traced to the breach complained of are excluded. Under the former rule such damages only are allowed as the parties may fairly be supposed, when they made the contract, to have contemplated as naturally following its violation." (Citing cases.) (See, also, *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205; *Taylor* v. *Bradley*, 39 id. 129; also reported in 4 Abb. Ct. App. Dec. 363; *Schell* v. *Plumb*, 55 N. Y. 592; *Dennis* v. *Maxfield*, 10 Allen, 138; *Simpson* v. *London & N. W. R. Co.*, L. R. [1 Q. B. D.] 274; *Jaques* v. *Millar*, L. R. [6 Ch. Div.] 153; *White* v. *Miller*, 71 N. Y. 118; *Mitchell* v. *Read*, 84 N. Y. 556; *Danolds* v. *State of N. Y.*, 89 id. 36; *Etherington* v. *P. P. & C. I. R. R. Co.*, 88 id. 641; *Houghkirk* v. *D. & H. C. Co.*, 92 N. Y. 219.)

The rule of damages here applied to contracts is equally applicable to a trespass.

While there are many cases where the loss of profits may be recovered, as such, the present action does not fall within that class. (*Snow* v. *Pulitzer*, 142 N. Y. 263; *Schile* v. *Brokhahus*, 80 N. Y. 614, and other cases.)

We refrain from expressing any opinion generally as to when profits, as such, may be recovered in actions of this kind, nor do we intend to qualify our decision in the *Forbell Case* (*supra*), resting, as it does, upon its own peculiar facts.

The question is, how has the fee, rental or usable value of the premises been diminished by the acts of which complaint is made. (*Tallman* v. *Metropolitan Elevated R. R. Co.*, 121 N. Y. 119; *Sayre* v. *State of N. Y.*, 123 N. Y. 291.)

The principle here involved is illustrated in the case of the value of land with timber and its value after it was cut; the

difference is the damage. (*Argotsinger* v. *Vines*, 82 N. Y. 308.)

It is also illustrated in *Rumsey* v. *N. Y. & N. E. R. R. Co.* (136 N. Y. 543), where a railroad company, without having acquired the rights of an owner of land bounded on a navigable river, had constructed its road along the water front and so cut him off from access to the river. It was held that he was entitled to recover the diminished rental value of his land caused by the obstruction, and not be restricted to the proof of the rental value of the land as actually used at the time of the obstruction, but could show by competent evidence the fair rental value if access to the river had not been prevented.

We are of opinion that the rule of damages laid down by the trial judge, that the actual history in any respect of any particular year before the water was taken, or since, should not be allowed to be proved on the question of general damage, is too narrow and cannot be sustained. It is quite true, as suggested, that the proprietor's labor and skill entered into the gross or net results of any particular year, and that they do not accurately represent the amount of legal damage. The effort to prove damages is oftentimes a mere approximation, and a plaintiff can only reasonably be held to the giving of such evidence as will assist the court or jury in determining the proper amount.

The plaintiff's wife was sworn as a witness and testified that she had lived with him since the year 1883 on the premises in question, and during all that time had kept complete accounts of the business. She was asked how she kept them, and was not allowed to answer. The plaintiff's counsel stated that it was his object to prove by this witness the gross sales and expenses of the farm from 1883 to date. The court said: "I decline to permit you to do it." The plaintiff's counsel then asked, "for any purpose." The court: "Yes, for any purpose."

Similar and additional evidence was offered and rejected when the plaintiff was on the stand. Evidence also was

rejected as to gross income, net income, expenses, prices, fertilizer, manure and help in various years before and after the trespass, which was sought to be proved in various ways.

It does not follow that if the plaintiff had been permitted to give this evidence in detail that the damages would be the difference between the net amount realized in prosperous years before the trespass and that received in subsequent years; in other words, his supposed profits.

It is, of course, quite impossible for the plaintiff, in giving a description of his business before the trespass, to eliminate from the gross or net amount of his income the result of his personal labor, skill, experience and the many fortuitous elements which necessarily entered into the final result. It is this fact that leads to the rule, in cases like the one before us, that profits, as such, are not recoverable. There are also elements that entered into the gross or net receipts from the farm in the years after the trespass that must be eliminated in considering the general result. The rule is that a plaintiff suffering from the tort or trespass of another is bound, so far as he reasonably can, to reduce his damages.

Applying this rule to the case before us, the plaintiff, after the trespass, would not be justified in efforts, year after year, to raise crops upon this damaged land or portions thereof, if experience had demonstrated that they would not mature and produce a marketable or profitable article. In other words, it would be for the court or jury to determine whether the plaintiff had exercised proper judgment, as a reasonable man, in the management of his farm, in view of the changed conditions produced by defendant's trespass.

The rule may be briefly stated to the effect that the plaintiff should be allowed to prove all the facts in regard to the manner of conducting business on his farm, before and after the trespass, calculated to give the court or jury a correct general idea of the condition of the farm and its productive value.

With these proofs in the record, supplemented by such evidence as the defendant might offer, a substantial basis of fact would be furnished upon which the court, juror or expert

might rest an opinion as to the fair and reasonable amount of damages suffered by the plaintiff, considering the effect of the trespass on the fee, rental or usable value of the property.

It was conceded on the trial that the defendant had by its trespass lowered the water level under this farm from three to eleven feet, and from this it is fair to assume that the result was to dry up its streams and wells and greatly impoverish the soil, and thereby the plaintiff suffered substantial damage.

It is unnecessary to quote from the record the repeated discussions between the trial judge and plaintiff's counsel, the result of a difference of opinion as to the true measure of damages and the conviction entertained by the court and frequently expressed that the plaintiff sought to recover too large a sum and was consuming an undue amount of time in proving his case.

We are of opinion that this record discloses legal error that calls for the reversal of the judgment and the ordering of a new trial.

In regard to the position of the defendant in this and kindred cases, it appears that since the year 1884 it has seen fit to occupy the position of a naked trespasser and sought to justify its action on the ground of paramount necessity arising from the requirements of a great city for an adequate supply of pure and wholesome water.

If it is necessary in the public interest for the defendant to subject the inhabitants of Long Island to the damages incident to maintaining a large number of pumping stations and driven wells, depriving extensive sections of the country of its underlying and percolating waters, as well as drying up its surface streams and wells, the least it can do is to meet plaintiffs in a spirit of fairness, eschewing technicality, and ascertain their actual damages in the premises, and if not contented to pursue such a course to institute condemnation proceedings.

It is true that the rights of the individual must yield to public necessity, but it should always be kept in mind that this result can only be fairly and legally accomplished by duly compensating the citizen for property damaged or destroyed.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

GRAY, J.    I concur in the conclusion that the judgment should be reversed and a new trial should be had of the action, for the following reasons.    We must assume, upon this appeal, that the plaintiff has been deprived by the defendant's acts of the beneficial use of the waters, which were upon his lands; or which, being under their surface, were made useful thereto, through natural processes.    That the defendant is liable for any damage, sustained in consequence, must be regarded as settled and that liability must be measured by the extent to which the fee value, or the rental value, has been diminished.    The nature of the case appears to be such that proof of the rental value, before and after the establishment of the defendant's pumping station, is difficult to be made.  Hence, the usable value of the premises, which, if not synonymous with rental value, has, as a term, an equivalent sense, should be allowed to be shown.    Evidence of the character and extent of the use made of the lands, of the nature of the business conducted thereon, when in their normal, or usual, condition, as to surface and subterranean waters, and when deprived thereof, was competent, as proving, or tending to prove, usable value.    In the light of such proof, it would then have been for the jury, or for the court, to determine whether, and to what extent, the fee value, or the rental value of the lands, as affected by the diversion of the waters, had been substantially injured.

It was, therefore, error to exclude, or to strike out, evidence showing the product and yield of the lands before and after the pumping began, and the business conducted by the plaintiff; which evidence would have informed the minds of the trial judge, or of the jurors, and would have enabled them to reach a conclusion as to the damage sustained by defendant's acts.

PARKER, Ch. J., MARTIN, CULLEN and WERNER, JJ., concur; O'BRIEN, J., not voting.

Judgment reversed, etc.