(101 App. Div. 93)

### REISERT v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. January 20, 1905.)

1. WATERS—LOWERING OF SUBTERRANEAN TABLE—DAMAGES—EVIDENCE—SUFFICIENCY.

In a suit for damages for lowering the natural level of the water table under plaintiff's land by the operation of pumps and driven wells adjacent to plaintiff's property, and for an injunction to restrain the operation of the pumps, evidence examined, and *held* to show that a finding that plaintiff had neither suffered damage to the rental nor the fee value of his land, other than the cost of driving his wells further into the ground, was unwarranted.

Appeal from Special Term, Kings County.

Action by Frederick Reisert against the city of New York. From the judgment (86 N. Y. Supp. 576), plaintiff appeals. Reversed.

See 71 N. Y. Supp. 965; 74 N. Y. Supp. 673; 66 N. E. 731.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

James D. Bell, for appellant.

James C. Van Siclen, for respondent.

HOOKER, J. The plaintiff sues for past damages and a permanent injunction restraining the operation of defendant's pumps and driven wells near his farm. It was admitted upon the trial that the operation of these wells had lowered the natural level of the subterranean waters under the plaintiff's property, and it was there conceded that the only question in the case was the extent to which the pumping stations had lowered the water table, and any damage traceable thereto. The sixth finding of fact is as follows:

"That by reason of said pumping and trespass on and to the plaintiff's land and premises the plaintiff, during the past ten years, has suffered no damage to the rental value nor to the fee value of said premises."

The opinion of the learned trial court, delivered in deciding this case, and its rulings upon the trial, make it clear that it adopted the measure of damages which has been determined to be the correct one governing cases of this kind. Reisert v. City of New York, 174 N. Y. 196, 66 N. E. 731; Id., 69 App. Div. 302, 74 N. Y. Supp. 673; Smith v. City of Brooklyn, 160 N. Y. 357, 54 N. E. 787, 45 L. R. A. 664; Forbell v. City of New York, 164 N. Y. 522, 58 N. E. 644, 51 L. R. A. 695. Applied to the facts in this case, the rule of damages as laid down by the decision of the Court of Appeals is to what extent the rental value of the lands, as affected by the diversion of the water, had been substantially injured. Judge Bartlett, for the Court of Appeals in this case, has written these pertinent sentences (page 210, 174 N. Y., page 735, 66 N. E.):

"In regard to the position of the defendant in this and kindred cases, it appears that since the year 1884 it has seen fit to occupy the position of a naked trespasser, and sought to justify its action on the ground of paramount necessity arising from the requirements of a great city for an adequate supply of pure and wholesome water. If it is necessary, in the public interest, for the defendant to subject the inhabitants of Long Island to the damages incident to maintaining a large number of pumping stations and driven wells, depriving extensive sections of the country of its underlying and percolating waters, as well as drying up its surface streams and wells, the least it can do is to meet plaintiffs in a spirit of fairness, eschewing technicality, and ascertain their actual damages in the premises, and, if not contented to pursue such a course, to institute condemnation proceedings. It is true that the rights of the individual must yield to public necessity, but it should always be kept in mind that this result can only be fairly and legally accomplished by duly compensating the citizen for property damaged or destroyed."

The evidence and the findings in this case establish beyond the possibility of dispute, under the rule announced by the Court of Appeals in the Forbell Case, supra, that the defendant is a naked

trespasser; and if the plaintiff has sustained any damage whatever, and is likely to sustain any in the future, by reason of the trespass, he is without doubt entitled to an injunction; and if, on the trial of these questions, adequate proof is offered tending to show what the extent of his injury has been within the six years prior to the commencement of the action, under the proper measure of damages, he is entitled to a judgment for that amount. The sixth finding of fact—that the plaintiff has suffered no damage to his premises—is insufficiently supported by the evidence, and the judgment must be reversed for that reason.

The pumping plant commenced its operation in or about the month of May, 1885, within a few hundred feet of the plaintiff's premises. Prior to that time a clear stream ran on the western boundary of plaintiff's land for a portion of its course, and for a distance flowed through one corner of his farm. Before the pumps began to operate, this stream was between one and two feet deep, and in some places three feet. Holes six feet in depth existed. At the southerly portion of the farm the stream ran into and across plaintiff's land, and at that point, before the commencement of the operation of the pumps, the plaintiff had started the establishment of a game and fish preserve, where he owned both sides of the stream. It was used for watering produce, horses, cattle, and for raising trout and water cresses. It was unnecessary at that time for the plaintiff to pump water for domestic or farm use. He had raised trout in the stream, which abounded there, and these he used for himself and sold. The conclusion is irresistible that by reason of the maintenance and operation of the pumping stations this stream has practically dried up, and such water as is found in its bed now is surface water; and although, immediately following rains, water flows through the creek, the flow soon stops, and what water remains is stagnant. Prior to the trespass the stream was permanent, did not dry up in summer, and seldom froze over in the winter time. The plaintiff produced expert evidence tending to show that the difference in the fair rental value of his farm in the absence of the pumping station was considerably greater than it was by reason of the operation of the pumps, in conformity with the rule announced by the Court of Appeals in this case. The court admitted all the evidence tending to show the character and use made of the lands, the nature of the crops grown thereon, and the business conducted there, together with the gross and net income, prices, fertilizer, manure, and the help in the various years both before and after the trespass. The plaintiff's expert evidence was based upon these circumstances and conditions, taken in connection with the effect upon agriculture which a considerable lowering of the water table would entail. The defendant called a number of experts, some of whom were farmers, the burden of whose testimony was that the lowering of the water table would not have any effect upon the productiveness of the soil such as existed on Long Island in the vicinity of the plaintiff's premises, and that the rental or usable value of plaintiff's premises was not affected or diminished by reason of the consequences following from the de-

fendant's trespass. The plaintiff had occupied and worked the farm himself since the year 1883, and, in the absence of its having been rented, either during the continuance of the trespass or otherwise, proof of the rental or usable value was difficult to obtain. The Court of Appeals held upon the prior appeal in this case that evidence of the character and extent of the use made of the lands and of the nature of the crops and business conducted there, together with evidence of the income, both gross and net, expenses, prices, fertilizer, manure, and help, when in their normal and usual condition as to subterranean waters and also when deprived thereof, was competent as tending to show usable value. It is clear that, unless direct proof of the usable value was offered, based upon actual rentals, under conditions which would suggest that fair-rent was being paid therefor, experts who might undertake to swear to the fair usable rental value could not give adequate answers, or give the court valuable information to guide it in awarding damages, without taking into consideration all the conditions to which we have referred, and which the Court of Appeals has said is competent on this question. It is clear from the record that the defendant's experts did not testify upon a consideration of such facts and circumstances, and especially is it true that none of them was asked or appeared to consider the rental or usable value in the presence or absence of the natural stream at the westerly end of the plaintiff's farm. The conclusion is irresistible, from a consideration of this record, that the 'plaintiff has suffered damage other than the sole item of $90, the cost of driving his wells further into the ground, which the court has allowed.

Both parties ask this court that, in the event of a reversal, final disposition should be made of the matter. The judgment of reversal should therefore contain a direction that an injunction issue restraining the defendant from maintaining and operating its conduit lines and pumping stations, and from diverting the surface and subterranean waters, not to become operative, however, if within a reasonable time (to be fixed by the judgment) the defendant pay the plaintiff the value of the right to maintain and operate its conduit lines and power station as against the plaintiff, the amount to be appraised by commissioners duly appointed; and the judgment should further provide that the action be remitted to the Special Term for the purpose of appointing a referee to take evidence and determine the amount of the plaintiff's damages, with costs to the appellant. All concur.