Howard T. Hogan, J.
The County of Nassau has condemned the subject property for drainage and/or other public purposes.
Three of the parcels involved were owned by the estate of Julia M. Loft, and upon these parcels are located certain lakes *303 or ponds. The City of New York has filed a notice of claim, asserting that it has an interest in these lands. The court has been asked to determine whether or not the city has such interest, and, if so, the nature and extent of it so that the county may pay just compensation accordingly.
Prior to the death of Mrs. Loft, the property had been held by the Fifty-Four Barclay Street Corporation, which was, in turn, wholly owned by Mrs. Loft’s husband. Many years ag'o, this property formed a part of a large estate occupied by the Lofts. Shortly before 1912, the city acquired property for the maintenance of a well-driven system on Long Island to supply the city with fresh water. In that connection, the city condemned a portion of the then Loft estate, and upon the portion so acquired sank two wells. No portion of the parcels which are the subject of this proceeding were taken in the pre-1912 acquisition.
The minutes of the Fifty-Four Barclay Street Corporation for a meeting* held on December 14, 1912, show that the company was concerned with a possible lowering of the water levels of the lakes located on the property which is subject of the instant proceeding. This fact is also shown in volume 1 at page 436 ei sec[. of proceedings before Commissioners of Appeal, Valley Stream, Lynbrook, etc., Town of Hempstead, held on December 17, 1912, wherein the attorney for the corporation advised the Commissioners that negotiations were being made in the city for a contract to preserve the water levels. No claim for consequential damages was made in the earlier condemnation.
At this time, a series of cases held that a municipality could be held liable for the damage to streams, ponds and subterranean water as a result of the city’s wells and pumps (see Van Wycklen v. City of Brooklyn, 118 N. Y. 424; Smith v. City of Brooklyn, 160 N. Y. 357; Forbell v. City of New York, 164 N. Y. 522; Reisert v. City of New York, 174 N. Y. 196; Westphal v. City of New York, 75 App. Div. 252, affd. 177 N. Y. 140).
These, then, were the surrounding circumstances which were existent on December 14, 1912, when a document was executed by the president and the secretary of Fifty-Four Barclay Street Corporation and on the 9th day of January, 1913, when it was executed by the Comissioner of Water Supply, Gas and Electricity of the City of New York. The document had been approved as to form by the Acting Corporation Counsel, was duly acknowledged by each of the above individuals, and was thereafter, on January 13, 1913, recorded in Nassau County, Liber 327 of Conveyances at page 426.
*304 This document provides, in essence, that the Fifty-Four Barclay Street Corporation consented to the maintenance of the city-owned wells on the city-owned property provided that the city maintained the level of the waters in the corporation’s ponds. It described the land of the corporation by metes and bounds, and gave to the city the right to enter upon the corporate lands to measure the water level, to install gauge boards, and other material, all for the purpose of maintaining the levels. The city also agreed not to construct any additional well-driven pumping systems on its own land at, near, or adjacent to the retained corporate land.
The corporation agreed, inter alia, to avoid all “unnatural waste of water from the ponds” to notify the city when the ponds were to be cleaned, and to permit the city to remove its pipes and other materials if and when the city abandoned its well-driven system.
This synopsis of provisions of the document is indicative of its general tenor. There is nothing either in the document or the circumstances which shows any intent other than to protect and benefit the property owned by the corporation. The document states that it is a covenant running with the land in perpetuity, and binding upon the parties, their successors and assigns.
At some time during the last 50 years, the city installed two “ blow offs ” which it asserts are used to force water into the Loft estate 'so that the city can service or maintain its water pipe line. The city claims this right by virtue of the said document which it maintains has given to the city an easement over the Loft estate and permits it to use the ponds for such storage of water.
The court agrees that the document created an easement, but it finds that such easement is not in favor of the city-owned land, but for the benefit of the land formerly owned by the corporation. There is absolutely not one scintilla of evidence tending to show that there was any intent to benefit the city, to let it force water onto the estate or to give the city any beneficial interest whatsoever in these ponds.
Even if the document itself was not plain and unambiguous as to what rights are granted to whom, the surrounding circumstances of its execution do not aid the city’s contention. The document meets the requirements for a conveyance of real property (see Real Property Law, § 240, subd. 2; § 290, subd. 3).
Although ample consideration is demonstrated from the mutual promises contained in the document, consideration is not necessary in the creation of an easement, which may be *305 granted by gift (see Des Fosses v. Rastelli, 128 N. Y. S. 2d 302, mod. on other grounds 283 App. Div. 1069, affd. 308 N. Y. 850).
The right of the city to maintain its own wells on its own land is, by virtue of the agreement, subservient to the dominant right of the owner of the ponds to have their level maintained. Such is the nature of an easement in favor of the dominant tenant (see Pierce v. Keator, 70 N. Y. 419; Huyck v. Andrews, 113 N. Y. 81).
In Strough v. Conley (164 Misc. 248, affd. 257 App. Div. 1057, affd. 283 N. Y. 631), the court directed a municipality to furnish water to the plaintiffs. The village acquired a parcel for reservoir purposes. Prior to that acquisition, the village entered into an agreement with the lower riparian owners that in exchange for all their interest to water from the upland parcel, the village would supply them with water as long as the water was diverted. In considering the agreement, the lower court held that (p. 254): “ By its terms it conveyed water rights and it granted easements. It was clearly intended to be not only for the personal benefit of the first parties as owners who executed it, but as an appurtenance of the farms they then owned.”
See, also, Spencer v. Kilmer (151 N. Y. 390), where the Court of Appeals found an easement appurtenant in favor of land upon which a fish pond was located and supplied with water from another’s land.
In the ease at bar, the agreement was sufficient to grant an easement appurtenant, running with the land in favor of the owner of the ponds. The city has no right whatsoever to force water onto this land. Its sole interest in the subject parcel is its duty to maintain the water level. Since the city has no beneficial interest in the land, it cannot be entitled to compensation in this proceeding.