(128 App. Div. 33.)

HATHORN et al. v. NATURAL CARBONIC GAS CO.

(Supreme Court, Appellate Division. Third Department. September 21, 1908.)

1. WATERS AND WATER COURSES—PERCOLATING WATER—OWNERSHIP.
    Ordinarily percolating water found in land belongs to the owner of the land, and his use thereof to the detriment of his neighbor is without remedy; but he may not lawfully despoil his neighbor's land.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Waters and Water Courses, § 110.]

2. MINES AND MINERALS — MINERAL SPRINGS—REGULATION OF USE—STATUTES —VALIDITY.
    Laws 1908, p. 1221, c. 429, § 1, prohibiting pumping or otherwise drawing by artificial appliance from any well, made by drilling into the rock, certain mineral waters, etc., for the purpose of extracting and vending the gas separate from the water is a valid exercise of the police power, since a provision to conserve the gas, which alone gives vitality to the water and makes it valuable for use, is not a destruction of property, and since the

right to draw the vitality from the land or spring of another is not a property right, which the Constitution has placed beyond the police power.

3. CONSTITUTIONAL LAW — DUE PROCESS OF LAW—MINERAL SPRINGS—REGULATION OF USE.

Laws 1908, p. 1221, c. 429, § 1, forbidding the extraction by artificial means from any well drilled into the rock of certain mineral waters for the extraction and sale of the gas apart from the water, is not invalid as depriving the owner of his property without due process of law.

4. SAME—STATUTES—CONSTRUCTION IN FAVOR OF VALIDITY.

A statute should be construed in such manner as to give it force and effect, if the language thereof permits it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 46.]

5. SAME—PROPERTY RIGHTS—INVASION—MINERAL SPRINGS—REGULATION.

Laws 1908, p. 1221, c. 429, providing that pumping, or artificially accelerating the natural flow, or producing an unnatural flow, of, certain mineral waters from any well made by boring into the rock, or pumping or artificially accelerating the natural flow, or producing an unnatural flow, of natural carbonic natural gas contained in any well, shall be unlawful, etc., merely prohibits the owner from accelerating or obtaining an unnatural flow from his well, so that he cannot artificially bring to his well and take from it a greater supply than will naturally come from there, and the provision is not invalid as an unreasonable invasion of property rights.

6. SAME.

Laws 1908, p. 1221, c. 429, making the doing of any act whereby the natural flow from any spring or well of a designated class of mineral waters is diminished or impeded, or the quality of the waters impaired, or the quantity of its carbonic acid gas or mineral ingredients diminished, unlawful, is invalid as an unreasonable exercise of legislative power to the injury of the property owner; for, where certain springs in a given locality are being depleted as to quality and quantity of water or gas, the proper use by an adjoining owner of his well or spring may in some degree affect unfavorably the well or spring of another, and the provision of the statute in such a case will in substance deprive every owner of the right to make use of his well.

7. SAME—EQUAL PROTECTION OF THE LAW.

The fact that by Laws 1908, p. 1221, c. 429, the Legislature has determined that, where the water and gas escape from their imprisonment from under or in the rock and are found above the rock, the owner of the soil shall not be prohibited from using them in any manner permitted by the common law, and has determined that springs bored in the rock shall be considered as a class by themselves, and all in the same class and similarly situated shall be subject to certain regulations, does not render such legislation invalid as denying the equal protection of the law.

Cochrane, J., dissenting.

Appeal from Special Term, Saratoga County.

Action by Frank H. Hathorn and another against the Natural Carbonic Gas Company. From an order granting a preliminary injunction, restraining in substance the acts declared unlawful by Laws 1908, p. 1221, c. 429, defendant appeals. Modified and affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Morris & Plant (Edward W. Harch, of counsel), for appellant.
Rockwood, Scott & McKelvey (C. C. Lester, of counsel), for respondents.

JOHN M. KELLOGG, J. The spring water at and near the town
of Saratoga Springs is found far below the surface of the earth and
under the rock, which holds the water and natural carbonic acid gas
under great pressure; the gas and water seeking to escape through
fissures in the rock, or wells bored into the rock. In many places
the water charged with gas comes from the bored wells by the pres-
sure from within, and forms flowing wells. In others it raises to
various heights in the bore, and it is necessary to lift it by artificial
means to the surface. Some dry wells emit gas without water. In all
these waters traces of the same minerals are found; but the springs
vary in the proportion in which such minerals are found. This large
subterranean supply of carbonic acid gas and natural mineral water
fills the joints, cavities, crevices, and pores in the rock below, and
the pressure of the gas forces the water to the surface in places, and
in other places brings it within the reach of the landowner. The pres-
sure from the gas keeps the surface water and carbureted hydrogen
from the supply, and thus preserves the purity of the water. When
the gas is withdrawn from the water, the pressure is gone, the water
itself depreciates, the mineral salts precipitate, and leave ordinary
water of an inferior quality. From time to time many flowing wells
have ceased to flow. Dry wells, emitting gas, have become ineffective,
the pressure at various wells has lessened and failed, and the water
deteriorated, and in some cases become worthless. Defendant's busi-
ness is drawing by deep-water pumps from various wells upon its
premises of 21 acres the water and gas, collecting the gas in retorts,
compressing it, storing it in steel tubes, and selling the tubes thus
charged for commercial purposes. The water and the gas absorbed
therein is permitted to go upon the ground. Very large quantities of
water are required to furnish a small quantity of gas. Defendant's
pumps bring to the surface 150 gallons of water and gas per minute,
working day and night and Sundays. The defendant, prior to the
legislation in question, had installed and was operating an expensive
plant and machinery for the purposes of its business, and other com-
panies are carrying on a large business of a similar character.

The plaintiffs allege that the springs or wells are in some manner
connected, and that the operations of the defendant lessen the gas
pressure of their and other wells, and cause a deterioration of the
water therein, and that by pumps of great force and reach the de-
fendant obtains more than the natural flow of water and gas to its
wells, and deprives the plaintiffs and others of the natural flow of
water and gas which would otherwise come to their springs; and
plaintiffs further allege that their springs or wells and property and
the springs and wells and property of others are being destroyed by
such acts on the part of the defendant, and by its use and waste of
the water and gas in the manner stated. Many of the springs or
wells are shown to have a connection with other springs. The plain-
tiffs contend that all such springs or wells are directly or indirectly
connected with each other. The defendant denies that its springs or
wells have any connection with the plaintiffs' spring or wells, 4,600
feet distant, or that its operations in any way affect or prejudice the

plaintiffs. It is unnecessary to consider what effect the demurrer has upon such denials.

The plaintiffs seek to enjoin the defendant from obtaining and using the water in the manner stated, basing such right both upon the common law and under chapter 429, p. 1221, of the Laws of 1908, which statute is entitled "An act for the protection of the natural mineral springs of the state, and to prevent waste and impairment of its natural resources." The defendant denies any common-law liability and urges that the statute is unconstitutional, as depriving it of its property without due process of law and denying to it the equal protection of the law.

The springs or wells at and near Saratoga Springs are of the class mentioned in the statute. The first section of the statute refers to "wells bored in the rock" and "that class of mineral water holding in solution natural mineral salts and an excess of carbonic acid gas," and declares unlawful four separate acts: (1) "Pumping, or by any artificial contrivance whatever, or in any manner accelerating the natural flow" of such water from the well, or "by any artificial contrivance whatever in any manner accelerating the natural flow or producing an unnatural flow of the natural carbonic acid gas issuing from or contained in" any such water; (2) the same acts, when they lessen or impede the natural flow from any other spring, or diminish or impair the quality of the carbonic acid gas or mineral ingredients; (3) "pumping, or otherwise drawing by artificial appliances from any well made by boring or drilling into the rock, that class of mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas, or pumping, or by any artificial contrivance whatsoever, in any manner producing an unnatural flow of carbonic acid gas issuing from or contained in any well made by boring or drilling into the rock, for the purpose of extracting, collecting, compressing, liquefying or vending such gas as a commodity otherwise than in connection with the mineral water and the other mineral ingredients with which it was associated;" (4) the doing of any act or thing whatsoever whereby the natural flow from any such spring or well is impeded or diminished, or the quantity of the carbonic acid gas or mineral ingredients diminished.

In as brief a manner as may be I will state the conclusions which seem to govern this appeal. In Ohio Oil Company v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729, it was held that a statute of the state of Indiana declaring it unlawful to permit the flow of gas or oil from any natural gas or oil well into the open air, without being confined within the well or proper pipes or other receptacles, was not unconstitutional, and that the company which drilled wells into the oil-bearing rock, producing natural gas and petroleum, and allowed the gas to go to waste, and only used the oil, could properly be enjoined from so using its well. That case fully discusses the principles which underlie this case. It is summarized and approved in Bacon v. Walker, 204 U. S. 311, at page 316, 27 Sup. Ct. 289, at page 290, 51 L. Ed. 499, as follows:

"Of pertinent significance is the case of Ohio Oil Company v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729. There a statute of the state of Indiana

was attacked which regulated the sinking, maintenance, use, and operation of natural gas and oil wells. The object of the statute was to prevent the waste of gas. The defendants in the action asserted against the statute the ownership of the soil and the familiar principle that such ownership carried with it the right to the minerals beneath and the consequent privilege of mining to extract them. The principle was conceded, but it was declared inapplicable, as ignoring the peculiar character of the substances, oil and gas, with which the statute was concerned. It was pointed out that those substances, though situated beneath the surface, had no fixed situs, but had the power of self-transmission. No one owner, it was therefore said, could exercise his right to extract from the common reservoir in which the supply was held without to an extent diminishing the source of supply to which all the other owners of the surface had to exercise their rights. The waste of one owner, it was further said, caused by a reckless enjoyment of his right, operated upon the other surface owners. The statute was sustained as a constitutional exercise of the power of the state, on account of the peculiar nature of the right and the object upon which it was exerted, for the purpose of protecting all of the collective owners."

The third provision of the act above quoted makes unlawful the pumping or drawing by artificial means of such mineral waters for the purpose of extracting and vending the gas separate from the water. The Indiana case prohibited the waste of either the oil or gas as it flowed to the surface. It was alleged that there was a large subterranean deposit of natural gas, occupying a reservoir of large extent, with well-defined boundaries; but the defendant was charged with drilling wells into said gas and oil-bearing rock, producing natural gas and petroleum. Most of the landowners were using the gas and oil separately. The oil was forced by the gas from the pores in the rock. The gas was, therefore, put to a very proper use in forcing the oil to the surface; but the statute prohibited its waste even after such use. The New York statute in effect prohibits the destruction and waste of the mineral water for the purpose of vending the gas as a commodity. Here the seams, fissures, openings, and bores in the rock will permit the gas to go wherever there is direct or indirect connection between the various vents or wells. The situations, therefore, are not materially different.

It is recognized that ordinarily percolating water found in land belongs to the owner of the land, and his use thereof to the detriment of his neighbor is without remedy. He may not lawfully despoil his neighbor's land; but the difficulty in determining the real source of the waters, and the fact that an inquiry with relation thereto must rest in part upon conjecture, has permitted him to escape liability, although recent cases tend materially to qualify the rule as it was formerly understood. Smith v. City of Brooklyn, 18 App. Div. 340, 46 N. Y. Supp. 141, 160 N. Y. 357, 54 N. E. 787, 45 L. R. A. 664; Forbell v. City of New York, 47 App. Div. 371, 61 N. Y. Supp. 1005, 164 N. Y. 524, 58 N. E. 644, 51 L. R. A. 695, 79 Am. St. Rep. 666; Hathorn v. Strong S. S. Sanitarium, 55 Misc. Rep. 445, 106 N. Y. Supp. 553; Gagnon v. French Lick Spring Co., 163 Ind. 687, 72 N. E. 849, 68 L. R. A. 175. If all the landowners of the town of Saratoga, or any other part of the state similarily situated, were to bore wells and strive to their utmost to get a greater supply of gas than their neighbors get, conflict, riots, breach of the peace, multiplicity of lawsuits, great un-

certainty, and turmoil would result, and the destruction of all the springs in that locality would probably follow.

It may be quite impossible in a given case to determine whether the well of one owner is connected with his neighbor's well, or not, or with the other wells in the same locality, or whether excessive use of certain wells is drawing the gas and mineral water from other lands not yet bored with wells, and thus making them valueless for spring purposes. It is a known fact that many such wells near Saratoga Springs are so connected, and excessive pumping from one injures others. If the gas and water cannot be raised to the surface by artificial means, and the gas separated and sold apart from the water, these natural products have no use, except as mineral water, the same as nature supplied them to the landowner; and, where such springs have medicinal properties, vending water will become an ordinary business, attended with the ordinary risks attending the ownership of other property, and the springs will be less apt to be depleted. If every one pumps to obtain gas for sale as such, the supply under the town must be soon exhausted. A provision to conserve the carbonic acid gas, which alone gives vitality to the water and makes it valuable for use, is not a destruction of property. If the water is used for the purposes of destruction as mineral water, the owner profits not so much from the actual value of his own water or land as from the destruction of his neighbor's property. The right to sap or draw the vitality from the land or spring of another is not a property right which the Constitution has placed beyond the police power.

It is urged that the defendant is using its water for profit, and naturally uses it in the manner most profitable to it. But it is evident that the defendant cannot continue its present operations long before it exhausts all the water which naturally comes from and is stored in its 21 acres of land. Its business may be profitable, because by pumps of powerful reach, or by the gas pressure, the water and gas from neighboring lands is drawn to or forced to its premises, to the great injury of other landowners. These considerations, and others, seem to make reasonable the exercise of the police power of the state by this legislation, declaring that such mineral waters shall not be disintegrated and destroyed, in order that one owner may sap the vitality therefrom to the prejudice of all others, when the value taken is very small compared with the part destroyed. In Ohio Oil Co. v. Indiana, 177 U. S. 210, 20 Sup. Ct. 584, 44 L. Ed. 729, the court says:

"Hence it is that the legislative power, from the peculiar nature of the right and the objects upon which it is to be exerted, can be manifested for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment by them of their privilege to reduce to possession, and to reach the like end by preventing waste. * * * Viewed, then, as a statute to protect or to prevent the waste of the common property of the surface owners, the law of the state of Indiana, which is here attacked because it is asserted that it divested private property without due compensation, in substance is a statute protecting private property and preventing it from being taken by one of the common owners without regard to the enjoyment of others."

This statute unfavorably affects the defendant's business and the value of its plant; but it knew or was chargeable with knowledge that the great quantity of gas it has been using and the great quantity of

water it has been wasting for years could not originate entirely upon, and was not stored alone in, its 21 acres of land, and that its operations were depleting other lands in the vicinity of a great part of their natural value. It might readily have foreseen that the Legislature, in the exercise of the police power, might regulate the manner in which such hidden supplies of gas and mineral water should be used. It began and has continued its business with that chance always existing.

The first and second provisions of the statute, if intended to prevent all pumping, and to prohibit the landowner from taking water from his well unless it flows naturally to the surface, is unreasonable and an invasion of property rights. The landowner may make any proper use he may desire of the water contained in his land, and may by pumps, well sweeps, and buckets, or other means, raise the water from his well for use upon his land, so long as he does not take more than naturally comes to his well. But these provisions should not be given such a construction. If the language permits, they should be construed in such a manner as to have force and validity. They prohibit the owner to accelerate or obtain an unnatural flow from his well. In other words he must not by artificial contrivance bring to his well and take from it a greater supply than naturally would come there. The second provision applies only when such acts injure other wells or springs. The first provision refers to no other wells or springs; but if a land owner has bored no well he may at some time bore one, and he is therefore interested that the valuable mineral waters in his land should not be taken from it by another. These provisions, so interpreted, are fairly within the power of the Legislature.

The fourth provision of the statute is an unreasonable exercise of legislative power to the injury of the property owner. If certain springs in a given locality are being depleted as to quality and quantity of water or gas, the proper use by an adjoining owner of his well may in some degree affect unfavorably the well or spring of another, and this provision in such a case would in substance, if technically construed, deprive every owner of the right to make any use of his well.

The Legislature has determined that where the water and gas escape from their imprisonment from under or in the rock, and are found above the rock, the owner of the soil shall not be prohibited from using them in any manner permitted by the common law. This is not favoring springs not bored in the rock as against those drilled in the rock. It simply shows that the use of such springs or wells was not considered detrimental to the public or to other property owners. Whether in fact such conclusion is well-founded, or not, we are not to determine. Springs bored in the rock may properly be considered in a class by themselves, and so long as legislation affects alike all of the springs or wells in the same class and similarly situated it is not invalid because it does not include other classes. This legislation does not deny the equal protection of the law to any spring or landowner.

The second section of the statute permits any citizen of the state to maintain an action to restrain a violation of the provisions thereof in any city or town in which he is assessed for and is liable to pay a tax.

The plaintiff brings this action as the owner of a spring, and also as such citizen taxpayer.

The result, from these considerations, is that the first, second, and third provisions of the statute are valid, and the fourth invalid.

The injunction and order should therefore be modified as indicated, and, as so modified, affirmed, with $10 costs and disbursements to the respondent. All concur, except COCHRANE, J., who votes for reversal.